UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

RENSSELAER POLYTECHNIC
INSTITUTE and CF DYNAMIC
ADVANCES LLC,                                                                  1:18-cv-00549 (BKS/CFH)

                                                       Plaintiffs,

v.

AMAZON.COM, INC.,

                                                       Defendant.
_____

**Appearances:**

*For Plaintiffs:*
Christopher A. Seidl
Shui Li
Mary Pheng
Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402

Christine S. Yun Sauer
Li Zhu
Robins Kaplan LLP
2440 W. El Camino Real, Suite 100
Mountain View, CA 94040

Bryan J. Vogel
Danielle Rosenthal
Robins Kaplan LLP
399 Park Avenue
New York, NY 10022

*For Defendant:*
John G. Powers
Hancock Estabrook, LLP
AXA Tower I, Suite 1500
100 Madison Street
Syracuse, NY 13202

Joseph R. Re
Joseph S. Cianfrani
Jeremy A. Anapol
Knobbe, Martens, Olson & Bear, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614

Colin B. Heideman
Knobbe, Martens, Olson & Bear, LLP
925 Fourth Avenue, Suite 2500
Seattle, WA 98104

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.     INTRODUCTION

Plaintiffs Rensselaer Polytechnic Institute ("RPI") and CF Dynamic Advances LLC ("CF Dynamic") bring this patent infringement action against Defendant Amazon.com Inc. ("Amazon"). (Dkt. No. 1). Presently before the Court is Amazon's motion to dismiss Plaintiffs' complaint, arguing that CF Dynamic lacks standing. (Dkt. No. 89). Alternatively, Amazon requests that the action be stayed pending the resolution of a suit filed in Texas state court. (*Id.*). Plaintiffs oppose this motion. (Dkt. No. 91).

This matter was referred to United States Magistrate Judge David E. Peebles who, on February 25, 2020, issued a Report and Recommendation recommending that Amazon's motion to dismiss or, in the alternative to stay, be denied in its entirety. (Dkt. No. 103). Amazon filed an objection to the Report and Recommendation, arguing that Magistrate Judge Peebles erred by finding that CF Dynamic has standing. (Dkt. No. 104). Plaintiffs responded to Amazon's objection. (Dkt. No. 105). For the reasons set forth below, the Report and Recommendation is adopted, and Amazon's motion is denied.

## II.  STANDARD OF REVIEW

This court reviews *de novo* those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). "A proper objection identifies the specific portions of the [Report and Recommendation] that the objector asserts are erroneous and provides a basis for this assertion." *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013) (internal quotation marks omitted). Properly raised objections must be "specific and clearly aimed at particular findings" in the report. *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009). Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Id.*

## III.  DISCUSSION

The parties have not raised any factual disputes with the facts set forth in the Report and Recommendation, which carefully details the series of transactions on which Amazon relies for its assertion that Plaintiffs lack standing to pursue this patent action. (Dkt. No. 103, at 3–8). The Court adopts the facts in the Report and Recommendation and presumes familiarity with those facts.

### A.  Abstention

In the Report and Recommendation, Magistrate Judge Peebles first addressed Amazon's motion to stay this action pending the adjudication of the action CF Dynamic and DBD Credit Funding, LLC ("DBD") commenced in Texas state court against TechDev Holdings, LLC and the Spangenberg Family Foundation for the Benefit of Children's Healthcare and Education (collectively, "Spangenberg Entities"). (Dkt. No. 103, at 10–15). Amazon moved for a stay "on the basis of the abstention principles taught in *Colorado River Water Conservation District v.*

3

*United States ("Colorado River")*, 424 U.S. 800 (1976)." (*Id.* at 10). Magistrate Judge Peebles found that "although there may well be overlap between this case and the Texas Action, with at least some potential for conflicting results, that alone does not represent an exceptional circumstance warranting abstention." (*Id.* at 14–15). He "did not find that the interests of judicial economy would be served by staying this action," and did not find the "consideration of the relevant factors informing the decision of whether to abstain under *Colorado River*, particularly the need to protect plaintiff's right to adjudication of their claims in this court in the face of alleged ongoing infringement by Amazon, favor the granting of Amazon's motion" to stay. (*Id.* at 15).

The parties do not object to this finding, and so the Court reviews for clear error. *Ortiz*, 558 F. Supp. 2d at 451. Finding none, the Court adopts Magistrate Judge Peebles's finding that abstention is not warranted and the current action should not be stayed pending the resolution of the Texas action.

### B.  Standing

The Report and Recommendation next addressed Amazon's contention that the "complaint should be dismissed on the ground that the relevant documents reflect that [CF Dynamic] is not the exclusive licensee" of United States Patent No. 7,177,798 ("'798 Patent"), (Dkt. No. 103, at 15), which CF Dynamic must be in order to have standing to sue. CF Dynamic, as the party "seeking to establish federal jurisdiction, must make the showings required for standing." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 343 n.3 (2006). In the context of patents, it must show that it holds "exclusionary rights to the patent." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1338 (Fed. Cir. 2007); *see Intellectual Prop. Develop., Inc. v. TCI Cablevision of Calif., Inc.*, 248 F.3d 1333, 1346–57 (Fed Cir. 2001). RPI granted the Amended

4

RPI Exclusive License ("Exclusive License") to Dynamic Advances,[1] (Dkt. No. 92-3), who in turn transferred the Exclusive License to CF Dynamic.

Amazon "presents two main arguments for why" the Exclusive License did not validly transfer from Dynamic Advances to CF Dynamic. (Dkt. No. 103, at 18). Amazon first argues the Exclusive License could not have transferred to CF Dynamic through enforcement of DBD's security interest. (*See* Dkt. No. 89-20, at 12–15). Magistrate Judge Peebles agreed—because Marathon Patent Group, Inc. ("Marathon") "did not technically default on the loan with DBD . . . DBD could not have formally enforced any security interest under the loan," and thus "any argument that the [Exclusive License] was transferred to [CF Dynamic] pursuant to the security interest fails." (Dkt. No. 103, at 21–22). The parties do not object to this finding, and the Court finds no clear error. *Ortiz*, 558 F. Supp. 2d at 451. Thus, the Court adopts Magistrate Judge Peebles's finding that CF Dynamic does not have standing pursuant to DBD's enforcement of the security interest.

However, Magistrate Judge Peebles concluded that this finding "is not fatal to CF Dynamic's claim of standing" because CF Dynamic was granted the Exclusive License directly from the Assignment of Exclusive License Agreement ("AELA") from Dynamic Advances. (Dkt. No. 103, at 8; Dkt. No. 91, at 15). He explained that the AELA is "separate and apart from the security interest in favor of DBD" and thus does not "depend upon the validity of the Security Agreement." (Dkt. No. 103, at 22).

Amazon argues that the AELA did not transfer the Exclusive License to CF Dynamic because of the anti-assignment provisions within two agreements effectuating the sale of

---

[1] As Magistrate Judge Peebles noted, "despite the strong similarity in names, there is no affiliation between Dynamic Advances and CF Dynamic." (Dkt. No. 103, at 5).

5

Dynamic Advances to Marathon—the Dynamic Advances Purchase Agreement ("DA Purchase Agreement") and the Pay Proceeds Agreement ("PPA"; collectively "the Marathon Sale Agreements"). (Dkt. No. 93, at 12). Specifically, Amazon asserts that the Marathon Sale Agreements required the Spangenberg Entities and Granicus IP, LLC ("Granicus") to consent to any transfer of the Exclusive License. (*Id.*). It therefore argues that because these entities did not consent, the anti-assignment provisions in the Marathon Sale Agreements void the AELA's transfer of the Exclusive License to CF Dynamic under Texas law. (*Id.*).

Magistrate Judge Peebles rejected this argument and found that "the AELA is valid and gives [CF Dynamic] standing to enforce the '798 Patent in this action." (Dkt. No. 103, at 24). Amazon's argument as to why the AELA is void relies on several facts that Magistrate Judge Peebles assumed without deciding to "simplify" the issues in the case: "(1) the AELA was a sale,[2] (2) consent was necessary from the Spangenberg Entities and Granicus prior to the execution of the AELA pursuant to the [Agreements], (3) consent was not given . . . and (4) Texas law applies to whether the consent provisions in the [Agreements] invalidate the AELA." (*Id.*).

Focusing on Texas law concerning anti-assignment and consent provisions, Magistrate Judge Peebles concluded that "Texas courts will invalidate a transfer of rights made pursuant to an assignment of a contract that expressly forbids assignments." (*Id.* at 26). *See Island*

---

[2] Magistrate Judge Peebles assumed, without finding, that Amazon had correctly characterized the AELA as a sale—even though the document is captioned "Assignment of Exclusive License Agreement," and repeatedly "characterizes [the transaction] as an 'assignment.'" (Dkt. No. 103, at 24 n.8). Because Magistrate Judge Peebles assumed the AELA was a sale for the purposes of analysis, state law applies. *See Sky Techs. LLC v. SAP AG*, 576 F.3d 1374, 1379 (Fed. Cir. 2009) ("Usually, federal law is used to determine the validity and terms of an assignment, but state law controls any transfer of patent ownership by operation of law not deemed an assignment.").

6

*Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n*, 710 S.W.2d 551, 556 (Tex. 1986); *Texas Dev. Co. v. Exxon Mobil Corp.*, 119 S.W.3d 875, 880–81 (Tex. App. 2003).

Magistrate Judge Peebles concluded, however, that this line of cases does not control because they involved "anti-assignment clauses found within the agreements that were being assigned," whereas here, "the relevant consent provisions were included within wholly separate agreements between different parties." (Dkt. No. 103, at 27). In other words, the cases Amazon relied on to void the AELA stand for the proposition that when a contract *itself* contains an anti-assignment provision, the attempted assignment *of that contract* will be invalid. In this case, "[t]he instrument that was assigned and that conveyed the rights giving [CF Dynamic] standing to enforce the '798 Patent is the [Exclusive License], not the [Marathon Sale Agreements]." (*Id.* at 29). The Exclusive License did not contain an anti-assignment provision and only required RPI's consent to be transferred. (Dkt. No. 92-3, at 13). Given RPI's consent to the transfer of the Exclusive License, (Dkt. No. 92-4, at 2), Magistrate Judge Peebles found that "the AELA is a valid and enforceable assignment that conveyed the exclusive rights to the '798 Patent" to CF Dynamic. (Dkt. No. 103, at 29).

Amazon argues that the Report and Recommendation "erred by disregarding the anti-assignment provisions" in the Marathon Sale Agreements, because Texas law voids prohibited assignments. (Dkt. No. 104, at 12–14). According to Amazon, the Report and Recommendation improperly relied on policy considerations and "substituted its own judgment . . . about fairness" to "create[] a novel exception to the Texas rule where the anti-assignment provisions are not 'within the agreements that were being assigned.'" (*Id.* at 14–15 (quoting Dkt. No. 103, at 27)). Having reviewed this issue *de novo*, the Court agrees with Magistrate Judge Peebles and finds

7

that the application of Texas law to this case does not negate CF Dynamic's standing to sue as an exclusive licensee of the '798 Patent.

Amazon argues that the transfer of the Exclusive License was invalid under Texas law because the Marathon Sale Agreements required Dynamic Advances to obtain the consent of the Spangenberg Entities and Granicus prior to transfer. (Dkt. No. 104, at 12–13). It further argues that because these entities did not consent, the anti-assignment provisions void the AELA and defeat CF Dynamic's standing as an exclusive licensee. (*Id.* at 13). Amazon, however, misconstrues Magistrate Judge Peebles's analysis as resting on policy considerations concerning fairness. (Dkt. No. 104, at 15–16). Magistrate Judge Peebles recognized that Texas law would invalidate the transfer of the Exclusive License if the Exclusive License itself contained an anti-assignment provision. Magistrate Judge Peebles determined, however, that Texas law does not require the transfer to be invalidated based on the anti-assignment provisions in the wholly separate Marathon Sale Agreements to which Amazon was not a party.

This Court agrees. Under Texas law, parties have the right "to bind themselves to each other as they see fit," "so long as no statute is infringed," and the Court will enforce their agreed-upon anti-assignment clause. *Texas Dev.*, 119 S.W. 3d at 880-81 (quoting *Reef v. Mills Novelty*, 126 Tex. 380, 382 (1936)). So a party who enters into an agreement with an anti-assignment clause is entitled to its enforcement. *See, e.g.*, *Texas Dev.*, 119 S.W. 3d at 877-881 (ruling that Exxon's anti-assignment clause in its agreement with IRC Structures and Systems ("IRC") for services on an Exxon drilling rig is enforceable to void IRC's assignment of its right to receive payment for services performed); *Reef*, 126 Tex. at 382 (affirming judgment for employer, as to third party, when the third party had received an assignment of an employee's commission account in violation of the employer's anti-assignment clause in the employment contract). Here,

Amazon was not a party to any contract containing an anti-assignment provision;[3] it is not asking the Court to enforce its contract right.

Texas courts have also enforced anti-assignment provisions in agreements that are at issue involving a party in the action before the court. *See*, *e.g.*, *Cloughly v. NBC Bank-Sequin*, N.A. 773 S.W. 2d 652 (1989) (enforcing anti-assignment clause in annuity agreement to void debtor's transfer of the rights in annuity agreement in an action to garnish annuity payments); *see also Island Recreational Development Corp.,* 710 S.W. 2d at 556–57 (holding that the plaintiff had an interest in a loan commitment letter to pursue breach of contract action based on the commitment letter, despite having assigned the commitment letter to acquire construction financing, because the assignment—in violation of an anti-assignment provision in the commitment letter—"would be of no force"). Here, however, there is no anti-assignment clause at issue in the licensing agreement for the '798 patent: RPI consented to the license agreement, thereby satisfying the relevant provision in that agreement. And none of the parties in this action were parties to the 2014 Marathon Sales Agreements that Amazon asks this Court to enforce.[4]

Amazon argues that "Texas courts consistently enforce anti-assignment provisions in these circumstances." (Dkt. No. 104, at 4). Amazon, however, has not provided the Court with any authority that would support its request to enforce anti-assignment provisions in agreements that are wholly separate from the patent licensing agreement at issue when Amazon was not a

---

[3] The Court recognizes that Dynamic Advances is a signatory to one of these agreements—the DA Purchase Agreement. (Dkt. No. 89-4, at 17).

[4] Amazon notes that a defendant "may rely on the terms of an agreement" to which it is not a party in order "to show that a patent plaintiff lacks standing." (Dkt. No. 104, at 20–21). Certainly, courts consider whether agreements entered into by patent plaintiffs convey "a sufficient interest in the patent to entitle [the plaintiffs] to sue for infringement." *Propat Intern. Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1189 (Fed. Cir. 2007). That caselaw, however, does not further Amazon's argument that Texas law supports enforcement of anti-assignment provisions in agreements that are wholly separate from a patent licensing agreement and not executed by any of the parties in the patent dispute.

party to those agreements.[5] The Court therefore concurs in Magistrate Judge Peebles conclusion that CF Dynamic has standing to pursue this action.[6]

## IV. CONCLUSION

For these reasons, it is

**ORDERED** that the Report-Recommendation and Order (Dkt. No. 103) is **ADOPTED**; and it is further

**ORDERED** that Defendant's motion to dismiss or, in the alternative, to stay this action (Dkt. No. 89) be **DENIED** in its entirety; and it is further

**ORDERED** that the Clerk serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 27, 2020
Syracuse, New York

Brenda K. Sannes
U.S. District Judge

---

[5] Amazon also objects to the Report and Recommendation arguing that "speculation about potential waiver cannot supply the want of actual standing." (*Id.* at 21–23). Given the Court's agreement with Magistrate Judge Peebles's analysis regarding whether the AELA is void under Texas law, it is not necessary to address this objection because the Court finds that CF Dynamic has standing even if the Spangenberg Entities did not waive their right to enforce the anti-assignment provisions in the Marathon Sales Agreements.

[6] The Court further concurs in Magistrate Judge Peebles' conclusion that if New York law applied, and the Court had to look to the Marathon Sale agreements to determine the validity of the AELA, the AELA would be enforceable because the anti-assignment provisions "relied upon by Amazon do not contain language specifically voiding any agreement entered into without the requisite consents." (Dkt. No. 103, at 30 n.11) (citing *Au New Haven, LLC v. YKK Corp.*, 210 F. Supp. 3d 549, 554-56 (S.D.N.Y. 2016)). Under New York law, an anti-assignment provision would only void an assignment if the provision contained "clear, definite, and appropriate language declaring an assignment invalid." *Id.* (quoting *Purchase Partners, LLC v. Carver Fed. Sav. Bank*, 914 F. Supp. 2d 480, 505 (S.D.N.Y. 2012)). Plaintiffs have persuasively argued that, to the extent state law applies, it should be New York law because the "Exclusive License provides New York is the governing law, RPI is a New York corporation and CF Dynamic has its principal place of business in New York." (Dkt. No. 105, at 22 n.18). *See, e.g.*, *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 822 F.3d 620, 641-42 (2d Cir. 2016). The Court, however, need not reach that issue in light of this decision.