IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

RENSSELAER POLYTECHNIC
INSTITUTE and CF DYNAMIC
ADVANCES LLC,                          Civil Action No.
                                       1:18-CV-0549 (BKS/CFH)
                  Plaintiffs,

        v.

AMAZON.COM, INC.,

                  Defendant.

_____

APPEARANCES:                           OF COUNSEL:

FOR PLAINTIFFS:

ROBINS KAPLAN LLP                      BRYAN J. VOGEL, ESQ.
800 LaSalle Ave., Ste. 2800            DANIELLE ROSENTHAL, ESQ.
Minneapolis, MN 55402                  BENJAMEN C. LINDEN, ESQ.
                                       CHRISTOPHER SEIDL, ESQ.
                                       MARY PHENG, ESQ.
                                       SHUI LI, ESQ.
                                       TAYLOR MOORE-WILLIS, ESQ.
                                       CHRISTINE YUN SAUER, ESQ.
                                       LI ZHU, ESQ.

FOR DEFENDANT:

KNOBBE MARTENS                         JEREMY A. ANAPOL, ESQ.
2040 Main St., 14th Fl.                JON W. GURKA, ESQ.
Irvine, CA 92614                       JOSEPH S. CIANFRANI, ESQ.
                                       JOSEPH R. RE, ESQ.
                                       COLIN HEIDEMAN, ESQ.

HANCOCK ESTABROOK, LLP        JOHN G. POWERS, ESQ.
1800 AXA Tower I              JAMES P. YOUNGS, ESQ.
100 Madison St.
Syracuse, NY 13202

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiffs Rensselaer Polytechnic Institute ("RPI") and CF Dynamic
Advances, LLC ("Dynamic Advances") have commenced this action
against defendant Amazon.com, Inc. ("Amazon"), alleging patent
infringement. The patent at issue discloses a natural language interface
("NLI") consisting of a method for processing natural language inputs
provided by a user through a search of language-based databases.
Plaintiffs allege that certain of Amazon's products and services infringe
upon claims contained within the patent.

Despite their best efforts, the parties have been unable to agree on
the proper construction to be attributed to several claim terms contained
within RPI's patent, and now seek guidance from the court with regard to
eleven such terms. The question of claim construction has been referred
to me for the issuance of a report and recommendation to the assigned
district judge. Based upon the comprehensive submissions from the
parties and a claim construction hearing conducted by the court, I make

2

the recommendations that follow.

I.      BACKGROUND

At the center of this case is United States Patent No. 7,177,798 ("'798 Patent"), issued on February 13, 2007, and entitled "Natural Language Interface Using Constrained Intermediate Dictionary of Results."[1] The '798 Patent discloses innovations in the area of NLI that are used to process inputs in the form of natural language queries. The patent lists Dr. Cheng Hsu, a professor at RPI, and Dr. Veera Boonjing, a former doctoral candidate at RPI who now teaches in Thailand, as the inventors, and RPI as the assignee of rights under the patent. Dynamic Advances, a limited liability company headquartered in Texas, is the exclusive licensee under the patent. The '798 Patent was issued based upon an application filed on May 21, 2001, and traces its roots back to a continuation-in-part application filed on or about April 7, 2000,[2] but later abandoned, and a provisional application filed on May 19, 2000.

---

[1]      The '798 Patent can be found at various locations on the docket. *See, e.g.,* Dkt. Nos. 1-1, 142-2, 143-2.

[2]      Although the specification identifies the filing date of the priority application as April 17, 2000, Amazon's expert in this action has suggested that the application was filed on April 7, 2000, and that the reference to the 17th is a typographical error. *See* Dkt. No. 142-14 at 9 n.2. Because the exact date is immaterial to the issues discussed in this report and recommendation, I find no need at this juncture to resolve the discrepancy.

The eleven disputed terms currently before the court for construction appear in several of the patent's claims. Claims 1 and 9, which are set forth below, are the patent's only two independent claims and provide a useful backdrop for addressing the terms implicated in the claim construction exercise.[3]

’798 Patent, Claim 1

> **1.** A method for processing a natural language input provided by a user, the method comprising:
> providing a natural language query input by the user;
> performing, **based on the input, without augmentation**, a search of one or more language-based databases including at least one **metadata database** comprising at least one of a group of information types comprising:
>> **case information**;
>> keywords;
>> information models; and
>> database values;
> **providing, through a user interface, a result of the search to the user**;
> identifying, for one or more language-based databases, a finite number of database objects; and
> **determining a plurality of combinations of the finite number of database objects**.

’798 Patent, Claim 9

> **9.** A computer-implemented method for processing a natural language input comprising:
> receiving a natural language input;
> providing from said natural language input a

---

[3]    The disputed terms in these two claims are set forth in bold text.

4

plurality of language-based database objects; **identifying a finite number of permutations of the plurality of database objects**, the database objects being stored in a **metadata database** comprising at least one of a group of information comprising
 **case information**,
 keywords,
 information models, and
 database values; and
**interpreting at least one of the permutations to provide determination of a result of the natural language input**.

Figure 2 of the '798 Patent, which depicts "a natural language query processor **201** according to one embodiment of the invention," '798 Patent, 12:52-53, is also useful in placing the disputed claim terms in context:



FIG. 2

In this embodiment, the processor **201** receives a natural language inquiry and produces a query result **203**.[4] *Id.* at 12:53-55. This is accomplished by mapping the query **202** to a plurality of database objects **204A** using a reference dictionary **208** containing keywords **209**, case information **210**, information models **211**, and database object values **204B**. *Id.* at 12:60-64.

The query processor **201** includes a reference dictionary object identifier **205** that parses the query **202** and generates one or more objects recognized in the reference dictionary **208**. '798 Patent, 13:17-20. The database processor **201** also accepts and processes a number of database objects **204A**. *Id.* at 13:23-24. Significantly, in the reference dictionary **208**, keywords **209** may be "learned" from the user or may be provided through a separate keyword administrator interface associated with the query processor **201**. *Id.* at 13:30-34.

The query processor **201** also includes an interpreter and dictionary processor **207** that determines optimal interpretations of the received objects, resolves ambiguities, updates information models **211**, and interacts with users to facilitate learning. '798 Patent, 13:35-42. Rules **212**

---

[4]   According to the '798 Patent specification, "the natural language query can take several forms including, by way of example, a paragraph, a sentence, sentence fragment, or a plurality of keywords." '798 Patent, 12:55-57.

and heuristics **213** are utilized by the processor **207** to resolve ambiguities in determining the optimal interpretation of the query **202**. *Id.* at 13:42-44.

A mapping processor **206** performs a mapping between incoming objects and database objects **204A**, and may generate database queries from the objects and interpretations provided by the identifier **205** and the processor **207**, respectively. '798 Patent, 13:52-56. The processor **206** may, for example, generate structural query language ("SQL") queries used to locate database objects **204A**, and those queries may be executed by an SQL search engine, and the processor **201** may provide a query result **203** to the user through, for example, a graphical user interface. *Id.* at 13:56-60.

II.    PROCEDURAL HISTORY

Plaintiffs commenced this action on May 8, 2018. Dkt. No. 1. In their complaint plaintiffs allege that several of defendant's products including, *inter alia*, Amazon Echo, Amazon Alexa, and Amazon Fire TV stick, and all Alexa-enabled devices, infringe at least Claim 1 of the '798 Patent.[5] On August 21, 2019, Amazon answered plaintiffs' complaint, generally denying its material allegations and asserting, as defenses, (1) non-

---

[5]    The accused products made, sold, and/or used by Amazon are listed in Appendix A to plaintiffs' complaint. *See* Dkt. No. 1 at 25.

7

infringement, (2) invalidity, (3) prosecution history estoppel, (4) unavailability of injunctive relief, (5) limitation on damages and costs, and (6) inequitable conduct. Dkt. No. 82 at 8-11. Amazon's answer also asserts counterclaims seeking declarations of non-infringement, patent invalidity, and patent unenforceability. *Id.* at 11. Plaintiff replied in answer to Amazon's counterclaims on September 11, 2019.[6] Dkt. No. 85.

In accordance with this court's local patent rules, the parties have requested construction of the following disputed terms:

| Term | Claims Implicated |
|------|-------------------|
| based on the input, without augmentation | 1-8 |
| metadata database | 1-21 |
| case information | 1-21 |
| case | 14-17 |
| providing, through a user interface, a result of the search to the user | 1-8 |
| determining a plurality of combinations of the finite number of database objects | 1-8 |
| resolving ambiguity between the keywords and the plurality of combinations | 5, 6 |
| identifying a finite number of permutations of the plurality of database objects | 9-21 |
| interpreting at least one of the permutations to provide determination of a result of the natural language input | 9-21 |
| provide determination of a result | 9-21 |
| result of the natural language input | 9-21 |

---

[6]     Additional procedural history not relevant to the issue of claim construction includes Amazon's motions to transfer the action to the Western District of Washington and for dismissal or, in the alternative, a stay of the action. Dkt. Nos. 34, 89.  Both of those motions were denied. Dkt. Nos. 81, 108.

In addition, after conferring, the parties have reached agreement

with regard to the following eleven claim terms:[7]

| Term | Claims Implicated | Construction |
|---|---|---|
| natural language query input | 1-8 | input that is articulated in a human language in a way that a native speaker could understand and use sensibly |
| natural language query input | 20 | natural language input |
| natural language input | 1-21 | input that is articulated in a human language in a way that a native speaker could understand and use sensibly |
| language-based databases | 1-21 | databases that include and store natural language information |
| database objects | 1-21 | objects included within a database, including but not limited to data types, data instances, database computational operators, data semantics, data structures, data instances or data values, and data operators |
| language-based database objects | 9-21 | database objects in a language-based database |
| keywords | 1-21 | natural words and phrases that users use to refer to database objects and information model elements in natural articulation |
| information models | 1-21 | webs of concepts for enterprise databases |
| reference dictionary | 4, 14-17 | set of database entries or objects and their relations |
| at least one metadata database comprising at least one of a group of information types comprising: case information; keywords; information models; and database values | 1-8 | at least one metadata database comprising one or more groups of information types including at least one group containing all four of the information types: case information, keywords, |

---

[7]    Based upon the parties' agreement, and having reviewed the '798 Patent, I recommend that the court adopt the parties' agreed-upon claim term constructions.

| Term | Claims Implicated | Construction |
|---|---|---|
| | | information models and database values |
| a metadata database comprising at least one of a group of information comprising case information, key words, information models, and database values | 9-21 | a metadata database comprising one or more groups of information types including at least one group containing all four of the information types: case information, keywords, information models, and database values |

Dkt. No. 129 at 1-2.

Following the submission of extensive briefing and supporting materials regarding the eleven disputed claim terms, I held a claim construction hearing on April 29, 2021. At the conclusion of that hearing, decision was reserved. The question of claim construction has been referred to me for the issuance of a report and recommendation. *See* Dkt. No. 150.

III.    DISCUSSION

A.    Claim Construction: The Legal Framework

1.    General Principles

Patent claim construction is a mixed issue of law and fact to be decided by the court. *Teva Pharmas. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331-32 (2015). When the court "reviews . . . evidence intrinsic to the patent (the patent claims and specification, along with the patent's prosecution history), the . . . determination will amount . . . to a

determination of law[.]" *Teva Pharmas. USA, Inc.*, 574 U.S. at 331. If it becomes necessary to "look beyond the patent's intrinsic evidence" and consult extrinsic evidence to provide accurate interpretations of disputed claims, the determinations are considered "subsidiary factual findings." *Id.* Subsidiary factual findings have been described as "the 'evidentiary underpinnings' of claim construction." *Id.* at 331-32.

When construing a patent, as a general rule, a court assigns disputed terms their ordinary and customary meaning as they would have been understood by a person of ordinary skill in the art ("POSITA"), as of the date of filing on or about April 7, 2000, when read in the context of the patent specification and prosecution history.[8] *SpeedTrack, Inc. v. Amazon.com* ("*SpeedTrack*"), 998 F.3d 1373, 1377 (Fed. Cir. 2021); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d

---

[8]    The parties did not address the characteristics of a POSITA in their briefs. Plaintiffs' expert, Dr. Steven Shwartz, has opined that a POSITA is "a person with two years of graduate or post-graduate level work in natural language processing and database systems and at least two years of experience in commercial research or development of natural language interfaces for databases." Dkt. No. 142-15 at 8. Dr. Earl Sacerdoti, Amazon's expert, has described a POSITA as a person "hav[ing] a graduate degree in computer science, or a similar field, with course work in artificial intelligence including natural language processing" or, alternatively, as a person who "would have a bachelor's degree in such a field with 2 or more years of industry experience in natural language query processing." Dkt. No. 142-14 at 9. In my view, the distinctions between the proffered characteristics of a POSITA in this case are not material for determining any of the issues at stake. For that reason, when resolving the disputes between the parties, I have considered each expert's definition of a POSITA.

965, 971 (Fed. Cir. 2018); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005).  "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a [POSITA] in question at the time of the invention[.]" *Phillips*, 415 F.3d at 1313; *accord, Finjan, Inc. v. Cisco Sys., Inc.*, 837 F. App'x 799, 804 (Fed. Cir. 2020).

There are two exceptions to this general rule, only one of which is relevant to this action. In particular, a claim term will be afforded a meaning other than its ordinary one when the patentee clearly and unmistakably disavows the full scope of the term either in the patent specification or during prosecution of the patent application. *SpeedTrack, Inc.*, 998 F.3d at 1377-78; *Butamax(TM) Advanced Biofuels LLC v. Gevo, Inc.*, 746 F.3d 1302, 1309 (Fed. Cir. 2014); *Thorner v. Sony Computer Entm't Am., LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). "A disavowal must be clear, but it need not be explicit." *Techtronic Indus. Co. Ltd. v. Int'l Trade Comm'n*, 944 F.3d 901, 907 (Fed. Cir. 2019) (internal quotation marks omitted). "Disavowal may be inferred from clear limiting descriptions of the invention in the specification or prosecution history," or "an inventor may . . . disavow claim scope by distinguishing the claimed invention over the prior art." *Techtronic Indus. Co. Ltd.*, 944 F.3d at 907 (internal quotation marks omitted). This exception to the general rule that patent

terms should be given their ordinary meaning is both narrow and exacting. *Thorner*, 669 F.3d at 1366-67.

While the words of a patent claim will generally control, they must not be interpreted in isolation and the POSITA "is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. A patent's specification often constitutes the "single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 7576, 1582 (Fed Cir. 1996); *accord, Phillips*, 415 F.3d at 1314. In this respect, a patent specification, which is like an internal dictionary, must be carefully reviewed to determine whether, for example, the inventor has used a particular term in a manner inconsistent with its ordinary meaning. *Vitronics Corp.*, 90 F.3d at 1582. When resorting to a patent's specification for guidance with respect to disputed claim terms, a court must consider it as a whole and, where possible, all portions should be read in a manner that renders the patent internally consistent. *Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1379-80 (Fed. Cir. 2001).

Although the language of a patent specification can provide important clues regarding the proper construction of a disputed claim term,

13

there are limitations upon its usefulness. "[W]hile it is true that claims are to be interpreted *in light of* the specification and with a view to ascertaining the invention, it does not follow that limitations from the specification may be read into the claims[.]" *Sjolund v. Musland*, 847 F.2d 1573, 1581 (Fed. Cir. 1988) (emphasis in original); *accord, Kinik Co. v. Int'l Trade Comm'n*, 362 F.3d 1359, 1364 (Fed. Cir. 2004). "Nor should particular embodiments in the specification be read into the claims; the general rule is that the claims of a patent are not limited to the preferred embodiment." *Cornell Univ. v. Hewlett-Packard Co.,* 313 F. Supp. 2d 114, 126 (N.D.N.Y. 2004) (citing, *inter alia*, *Texas Digital Sys., Inc. v. Telegenix, Inc.,* 308 F.3d 1193, 1204 (Fed. Cir. 2002)).

In addition to the ordinary meaning of a claim term itself and the patent's specification, the prosecution history related to the patent in issue can help inform the determination of a proper claim construction. *Phillips*, 415 F.3d at 1317. That history is generally comprised of "the complete record of proceedings before the Patent and Trademark Office [("PTO")], including any express representations made by the applicant regarding the scope of the claims" and an examination of any relevant prior art. *Vitronics*, 90 F.3d at 1582-83. Such evidence, which typically chronicles the dialogue between the inventor and the PTO leading up to the issuance

of a patent, and thus can act as a reliable indicator of any limitations or concessions on the part of the applicant, oftentimes proves highly instructive during claim construction. *See Phillips*, 415 F.3d at 1317 ("[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be.").

2.    Stare Decisis

On June 12, 2014, I issued a decision and order in *Rensselaer Polytechnic Institute v. Apple, Inc.* ("*Apple*"), Civil Action No. 13-CV-0633 (N.D.N.Y., June 12, 2014), construing several disputed claim terms from the '798 Patent.[9]  Inasmuch as that case was ultimately settled shortly before trial, the Federal Circuit Court of Appeals did not have occasion to pass upon the claim construction determination from that action. Although the defendant in that case was Apple, Inc., and Amazon was not a party to the litigation, and thus is not bound by res judicata or collateral estoppel with regard to those claim constructions, plaintiffs argue that I should

---

[9]    Specifically, that decision addressed the terms "natural language query input," "based on the input, without augmentation," "metadata database," "case," "case information," "information models," "database objects," "determining a plurality of combinations of the finite number of database objects," "identifying a finite number of permutations of plurality of database objects," and "reference dictionary." *Apple*, No. 13-CV-0633, Dkt. No. 104 at 44.

recommend the same constructions of mutually disputed claim terms in the interests of consistency and predictability. Addressing that argument in supplemental submissions, Amazon argues that the Federal Circuit Court of Appeals' recent decision in *SpeedTrack* undermines the significance of my constructions in *Apple.*

Horizontal stare decisis is a discretionary doctrine. Most district courts do not treat other district courts' decisions, including those issued by courts in the same district, as precedential. This is true for district courts presiding over claim construction issues where another district court has ruled on identical claim terms. *See, e.g., Verizon Cal., Inc. v. Ronald Katz Tech. Licensing, P.A.*, 326 F. Supp. 2d 1060, 1069 (C.D. Calif. 2003); *Texas Instruments, Inc. v. Linear Techs. Corp.*, 182 F. Supp. 2d 580, 589 (E.D. Tex. 2002).  This notwithstanding, however, claim construction rulings by other district courts are generally deemed highly relevant and can be regarded as persuasive authority. *Depomed, Inc. v. Sun Pharma Global FZE*, No. 11-CV-3553, 2012 WL 3201962, at *4 (D. N.J. Aug. 3, 2012); *see also KX Indus., L.P. v. PUR Water Purification Prods., Inc.*, 108 F. Supp. 2d 380, 387 (D. Del. 2000) (affording deference to the court's own previous claim construction rulings related to the same patent); *cf. Tech. Licensing Corp. v. Blackmagic Design Pty Ltd.*, No. 13-CV-5184,

2016 WL 8902602, at *5 (N.D. Calif. Nov. 23, 2016) (concluding that stare decisis does not apply to different district courts' interpretations of disputed claims but describing those decisions "as relevant intrinsic evidence" for purposes of its own claim construction analysis).

To the extent stare decisis applies to this court's previous claim construction ruling in the *Apple* litigation, it would apply only to the following two disputed terms: (1) "based on the input, without augmentation," and (2) "metadata database." Although there are three additional claim terms that were construed by the court in the *Apple* litigation and are now in dispute in this action, Amazon contends those terms are indefinite – an argument that was not presented by Apple and is separate and apart from the proper interpretation of the disputed terms. Those three claim terms include: (1) "case information," (2) "case," and (3) "determining a plurality of combinations of the finite number of database objects." Other than arguing indefiniteness, Amazon does not offer proposed constructions for these three terms.[10]

---

[10]    The Patent Trial and Appeal Board ("PTAB") has not construed the terms "case" or "determining a plurality of combinations of the finite number of database objections." It did, however, construe the term "case information" in the same way as the court did in *Apple* on more than one occasion, including in decisions denying two *inter partes* review ("IPR") petitions filed by both Apple and Amazon, and in denying motions by Amazon for rehearing. *See* Dkt. Nos. 143-4 at 6-7, 143-5 at 4-7, 14-17, 143-7 at 10-11.

In supplemental briefing the parties have exchanged views concerning the significance of the Federal Circuit's decision in *SpeedTrack* on the question of stare decisis. *See* Dkt. Nos. 163, 164. The district court in *SpeedTrack* issued an initial claim construction decision in which it construed a term ("category description") that paralleled the construction adopted in a prior infringement suit filed by SpeedTrack. 998 F.3d at 1376. In construing the term "category description," the district court applied stare decisis in light of the Federal Circuit's affirmance of its construction of that term in another action involving the patent-in-suit. *See SpeedTrack, Inc. v. Amazon.com, Inc.*, No. 09-CV-4479, 2019 WL 5864630, at *2 (N.D. Cal. Nov. 8, 2019). Based on subsequent disputes between the parties, however, the district court thereafter issued a second claim construction decision that clarified certain points and resolved the parties' specific disputes. *Id.* at 1377.

Absent from the Federal Circuit's discussion in *SpeedTrack* are any arguments that the district court's application of stare decisis was unreasonable or erroneous. In any event, the district court in *SpeedTrack* applied vertical stare decisis, which is distinct from, and subject to different weight than, horizontal stare decisis. Accordingly, I do not read the

Federal Circuit's decision in *SpeedTrack* as eroding the principle that horizontal stare decisis may be a useful tool in claim construction.

B.    Indefiniteness

Among Amazon's defenses is the contention that some of the claim terms of the '798 Patent are invalid because they are indefinite. Dkt. No. 82 at 8. As is relevant to the claim construction issue currently before the court, Amazon maintains that the following method claim limitations are indefinite:

(1)    providing, through an interface, a result of the search to the user (Claim 1)
(2)    determining a plurality of combinations of the finite number of database objects (Claim 1)
(3)    resolving ambiguity between the keywords and the plurality of database objects (Claim 5)
(4)    identifying a finite number of permutations of the plurality of database objects (Claim 9)
(5)    interpreting at least one of the permutations to provide determination of a result of the natural language input (Claim 9).

The first issue that the court must decide is whether the foregoing claim terms are subject to 35 U.S.C. § 112, ¶ 6 (2000).[11] Section 112, ¶ 6 provides as follows:

---

[11]    The Leahy-Smith American Invents Act, ("AIA") which took effect in 2012, resulted in § 112, ¶ 6 being renumbered as § 112(f). I am using the pre-AIA  section numbering in this report and recommendation because the '798 Patent was issued prior to the enactment of the AIA amendments.

> An element in a claim for a combination may be
> expressed as a means or step for performing a
> specified function without the recital of structure,
> material, or acts in support thereof, and such claim
> shall be construed to cover the corresponding
> structure, material, or acts described in the
> specification and equivalents thereof.

35 U.S.C. § 112, ¶ 6.

In *O.I. Corp. v. Tekmar Co., Inc.*, 115 F.3d 1576 (Fed. Cir. 1997), the Federal Circuit concluded that method claims generally, like the ones at issue in the '798 Patent, can be subject to § 112, ¶ 6. *O.I. Corp.*, 115 F.3d at 1582-83. When claims do not use the words "step for" or "means for," however, there is a presumption that the limitations described are not subject to § 112, ¶ 6. *Masco Corp. v. United States*, 303 F.3d 1316, 1327 (Fed. Cir. 2002); *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000) (citing *Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 703-04 (Fed. Cir. 1998)).[12] This presumption is "rebutted if the

---

[12]    Amazon has attempted to diminish the significance of *Masco* by arguing that it was overruled by the Federal Circuit's *en banc* decision in *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015). *See, e.g.*, Dkt. No. 148 at 9-10. *Williamson*, however, did not overrule *Masco*. Instead, *Williamson* eviscerated the "strong" presumption against applying § 112, ¶ 6 to a claim limitation that does not recite "means for" (or "step for") language. *Williamson*, 792 F.3d at 1349. While *Masco* may be the origin of the presumption against applying § 112, ¶ 6 to a claim term in the absence of the required trigger words, it was not until *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 354 F.3d 1354, 1358 (Fed. Cir. 2004), that the Federal Circuit began to describe that presumption as "strong." In *Williamson*, the Federal Circuit abandoned its

evidence intrinsic to the patent and any relevant extrinsic evidence so warrant." *Personalized Media Commc'ns, LLC*, 161 F.3d at 704. The presumption is not rebutted "because the claim limitation[s] recite[] or refer[] to terms that are reasonably well understood in the art as names for structure [or acts] and which perform the recited function[s]" referred to. *Watts*, 232 F.3d at 880. "[T]he focus remains on whether the claim as properly construed recites sufficiently definite structure [or acts] to avoid the ambit of §112, ¶ 6." *Personalized Media Commc'ns*, 161 F.3d at 704. "[W]here a claim recites a function, but then goes on to elaborate sufficient structure, material, or acts within the claim itself to perform entirely the recited function, the claim is not in means-plus-function format." *Sage Prods. v. Devon Indus., Inc.*, 126 F.3d 1420, 1427-28 (Fed. Cir. 1997); *see also Masco Corp.*, 303 F.3d at 1327 ("Where the claim drafter has not signaled his intent to invoke § 112, paragraph 6 by using the 'step[s] for' language, we are unwilling to resort to that provision to constrain the scope of coverage of a claim limitation without a showing that the limitation

characterization of the presumption as a "strong" one and reiterated that § 112, ¶ 6 can (and does) apply when a claim limitation recites a function without also reciting sufficient structure to perform that function. *Williamson*, 792 F.3d at 1348-49. Accordingly, despite Amazon's attempts to undercut the relevance of *Masco*, I find that *Masco* remains good law to the extent that it instructs courts to apply a regular (unweighted) presumption against applying § 112, ¶ 6 to claim terms that do not employ the words "step for" or "means for." *See Masco Corp.*, 303 F.3d at 1327; *accord, Neurografix ('360) Patent Litig.*, 201 F. Supp. 3d 206, 214 (D. Mass. 2016).

contains nothing that can be construed as an act.").

Judge Rader's concurring opinion in *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836 (Fed. Cir. 1999), addresses the distinction between the "function" and the "act" of a claim element, and is thus helpful in determining whether a claim limitation is subject to § 112, ¶ 6.  In his concurrence, Judge Rader explained that "the 'underlying function' of a method claim element corresponds to the *what* that element ultimately accomplishes in relationship to what the other elements of the claim and the claim as a whole accomplish. 'Acts,' on the other hand, correspond to the *how* the function is accomplished." *Seal-Flex, Inc.*, 172 F.3d at 849-50 (emphasis in original).

The parties' experts, Dr. Shwartz (for plaintiffs) and Dr. Sacerdoti (for Amazon) have offered competing opinions as to the underlying functions of each of the disputed claim limitations. For their part, plaintiffs contend that the language of the specific claim limitations at issue comprise the "act" (or the "how") of accomplishing the underlying function, whereas the specification describes the "function" or the "what" of the limitation. From plaintiffs' perspective, because the claim limitations describe acts, they fall outside the ambit of § 112, ¶ 6. Amazon, on the other hand, construes the claim limitations as describing functions that are unsupported by any acts

within the claim limitations themselves.

In determining whether § 112, ¶ 6 applies, a court must decide whether the claim limitation describes a function without a corresponding act to complete the function. Because of the presumption that applies absent inclusion of the "means for" and "step for" language, and the competing opinions regarding the particular functions of the disputed claim limitations, I am more persuaded by plaintiffs' contentions and, accordingly, recommend the court conclude that § 112, ¶ 6 does not apply to the method claim limitations. Plaintiffs' position is supported by *O.I. Corp.*, 115 F.3d at 1583. In that case, the district court had applied § 112, ¶ 6 to a claim limitation after concluding that the "function" of the claim limitation was found within the patent's preamble (rather than in the claim itself). *Id.* In reversing the district court, the Federal Circuit observed that, "[p]erforming a series of steps inherently produces a result, in this case the removal of water vapor from the analyte slug, but a statement in a preamble of a result that necessarily follows from performing a series of steps does not convert each of those steps into step-plus-function clauses." *Id.*

Having set forth the foregoing general principles and foreshadowing my recommendations, I will now turn to analyzing the pertinent claim

limitations to which Amazon contends § 112, ¶ 6 applies.

> 1.    Providing, through a user interface, a result of the search to the user

With respect to the first method claim limitation found in Claim 1 at issue – "providing, through a user interface, a result of the search to the user" – plaintiffs contend that the function is "to output a result of processing the natural language input." Dkt. No. 143 at 28; *see also* Dkt. No. 142-15 at 24. They argue that "this 'providing' step describes how outputting a result of processing the natural language input is accomplished—i.e., providing a result through a user interface." Dkt. No. 143 at 28; Dkt. No. 147 at 12; *see also* Dkt. No. 162 at 123. Amazon responds that the underlying function of this claim term is "determining the result," not simply outputting the result itself, and that the claim includes no description of any acts necessary to accomplish this function. Dkt. No. 142 at 16; Dkt. No. 148 at 12; Dkt. No. 162 at 140.

As was previewed above, I recommend the court side with plaintiffs and find that the underlying function of the claim term is to *output a result of the natural language input*. The act necessary to accomplish this function is expressly stated within the claim limitation: provide the result through a user interface. The specification supports this conclusion. '798 Patent, 9:10-12, 9:65-10:16.

Even if the court were to conclude that the function of this claim limitation is, as Amazon argues, "determining the result," according to the language of Claim 1, in order to determine a result, *a search must be performed*, and that "search" is described in the paragraph immediately preceding the claim term at issue. More specifically, Claim 1 contemplates that the method for processing a natural language input includes "*performing*, based on the input, without augmentation, *a search* of one or more language-based databases including at least one metadata database comprising at least one of a group of information types comprising: case information; keywords; information models; and database values." '798 Patent, 36:41-48 (emphasis added).

Ultimately, however, I am not persuaded by Amazon's primary contention that the claim term at issue describes a function because it ignores the purpose of the claim limitation, which is to provide a result of the natural language input *through a user interface*. Amazon's arguments erroneously focus on how the underlying search is performed, rather than how the result of the search is provided.

Because the claim limitation at issue does not describe a function untethered to an act sufficient to perform that function, I recommend the court conclude that § 112, ¶ 6 does not apply.

25

2.    Determining a plurality of combinations of the finite number of database objects, identifying a finite number of permutations of the plurality of database objects, and interpreting at least one of the permutations to provide determination of a result of the natural language input

With respect to the next method claim limitation in Claim 1 at issue – "determining a plurality of combinations of the finite number of database objects" – plaintiffs argue that the function of the claim is "to determine candidate interpretations of the natural language input." Dkt. No. 143 at 28; Dkt. No. 147 at 13; *see also* Dkt. No. 142-15 at 25. As to the acts required to accomplish that function, plaintiffs have stated in their briefs that "this 'determining' step describes *how* interpretations of the natural language input is accomplished—i.e., by determining a plurality of combinations of the finite number of database objects." Dkt. No. 143 at 28-29 (emphasis in original); *see also* Dkt. No. 147 at 13. As was already noted, plaintiffs clarified their position during oral argument by explaining that the specification describes the function of this claim limitation and that the claim limitation itself is the act needed to accomplish the function. Dkt. No. 162 at 152-53.

Plaintiffs also identify the same function for one of the two method claim limitations at issue in Claim 9, "identifying a finite number of permutations of the plurality of database objects." Plaintiffs then articulate

a very similar function for the second method claim term at issue in Claim 9, "interpreting at least one of the permutations to provide determination of a result of the natural language input."[13] More specifically, plaintiffs allege that the underlying function of the first Claim 9 limitation is "to determine candidate interpretations of the natural language input." Dkt. No. 143 at 29; Dkt. No. 147 at 14; *see also* Dkt. No. 142-15 at 26. They argue that the function of the second claim limitation is "to determine *the best* candidate interpretation of the natural language input." Dkt. No. 142-15 at 26 (emphasis added).

As was noted above, plaintiffs argue that Claim 9's claim limitations, like Claim 1's claim limitation of "determining . . . combinations," constitute the acts necessary to support the functions of determining candidate interpretations of the natural language input and determining the best candidate interpretation.

For its part, Amazon contends that these claim limitations describe functions – specifically, "determining . . . combinations," "identifying . . . permutations," and "interpreting . . . permutations" – and that the claim limitations do not describe any acts necessary to accomplish the functions.

---

[13]    The parties agree that "permutation" is a reference to potential query interpretations. *See* Dkt. No. 142 at 17 (citing the experts' declarations).

Dkt. No. 142 at 16-17; Dkt. No. 148 at 14-16.

Taking into consideration the entirety of Claims 1 and 9, as well as the written description of the '798 Patent as a whole, I am persuaded by plaintiffs' arguments that the functions underlying the claim limitations at issue are (1) "to determine candidate interpretations of the natural language input" for Claim 1's "determining a plurality" limitation and Claim 9's "identifying . . . permutations" limitation, and (2) "to determine the best candidate interpretation of the natural language input" for Claim 9's "interpreting . . . permutations" limitation. Dr. Shwartz's declaration points out that the '798 Patent specification supports this conclusion insofar as it explains that "[t]he basic idea of search is to enumerate all possible paths (query graphs) and to evaluate (rank) them to determine the best path (interpretation) for a query." '798 Patent, 33:37-39. The claim limitations describe the acts required to accomplish that function. In other words, to determine candidate interpretations of the natural language input, the method must call for determining a plurality of combinations of the finite database objects (as stated in the Claim 1 limitation at issue) and identifying a finite number of permutations of the database objects (as stated in the first Claim 9 limitation at issue). Similarly, to determine the best candidate interpretation of the natural language input, the method

must call for interpreting at least one of the permutations to provide

determination of a result of the natural language input (as stated in the

second Claim 9 limitation at issue).

Because Claims 1 and 9 describe steps associated with the method

of processing a natural language input and not functions, I recommend the

court conclude that § 112, ¶ 6 does not apply. *See O.I. Corp.*, 115 F.3d at

1583 ("[C]laiming a step by itself, or even a series of steps, does not

implicate section 112, ¶ 6. Merely claiming a step without recital of a

function is not analogous to a means plus function.").

 3. <u>Resolving ambiguity between the keywords and the</u>
 <u>plurality of combinations</u>

As to the last method claim limitation at issue, which is found in

Claim 5 – "resolving ambiguity between the keywords and the plurality of

combinations" – plaintiffs contend that the function is "to determine the

best candidate interpretation of the natural language input" and the act

needed to carry out this function is "by resolving the ambiguity between

the keywords and the plurality of combinations." Dkt. No. 143 at 29; Dkt.

No. 162 at 160. Amazon argues that the claim limitation "resolving

ambiguity" is the function, which is "unsupported by any acts." Dkt. No.

148 at 17; *see also* Dkt. No. 142 at 17.

After again considering the claim and patent as a whole, I agree with plaintiffs that the claim limitation at issue here describes an act, rather than a function. For that reason, I recommend the court conclude that § 112, ¶ 6 does not apply.

### 4.    Conclusion

Having recommended that the court conclude that § 112, ¶ 6 does not apply to the five method claim limitations, Amazon's contention that the claims associated with those limitations are indefinite must be rejected. In addition, because Amazon has not offered a competing proposed construction of those method claim terms, and, as reflected in the analyses above concerning each term, they appear to be readily understood as stated, I recommend the court decline to construe the method claim limitations. In particular, I recommend the court not construe any of the following claim terms:

(1)    providing, through an interface, a result of the search to the user (Claim 1)
(2)    determining a plurality of combinations of the finite number of database objects (Claim 1)
(3)    resolving ambiguity between the keywords and the plurality of database objects (Claim 5)
(4)    identifying a finite number of permutations of the plurality of database objects (Claim 9)
(5)    interpreting at least one of the permutations to provide determination of a result of the natural language input (Claim 9).

  
Finally, it should be noted that my recommended finding that § 112,

¶ 6 does not apply to the five method claim limitations does not prejudice

Amazon in moving for summary judgment based on lack of enablement,

failure to meet the written description requirements, or indefiniteness

under § 112, ¶ 2. Ultimately, each of Amazon's arguments with respect to

the five method claim limitations leads back to its primary contention that

the '798 Patent does not work. My rejection of Amazon's arguments that

the claim limitations are written as step-plus-function still allows Amazon to

argue in a summary judgment motion or at trial that the patent's claims

and specification fail to disclose a specific way of understanding and

interpreting a natural language input.[14]

C.    Construction of Disputed Terms

In addition to their disputes concerning the foregoing method claim

terms, the parties also offer competing constructions concerning five other

claim terms.

---

[14]    In addition to arguing, correctly so, that the working protype argument is not legally relevant to the claim construction inquiry, plaintiffs vigorously dispute Amazon's contention that, by their own admission, the patentees were unable to assemble a working prototype practicing the '798 Patent invention. Plaintiffs maintain that the argument is predicated upon incomplete depositions excerpts and mischaracterization of deposition testimony. *See, e.g.,* Dkt. No. 155 at 6-8. At this stage of the litigation, the court need not resolve this dispute between the parties.

### 1.    Based on the input, without augmentation

| Plaintiff's Proposed Construction | Amazon's Proposed Construction | Court's Construction |
|---|---|---|
| Based solely on the natural language input without augmentation | Based solely on the natural language input without additional sources of input or constraints on how the natural language is expressed[15] | Based solely on the natural language input without augmentation |

This claim term appears in independent Claim 1, and thus also applies to the seven dependent claims that follow. Plaintiffs' proposed definition is consistent with my construction of the term from the *Apple* litigation. Amazon would like to add a slight twist, proposing that the court add "without additional sources of input or constraints on how the natural language is expressed." The PTAB has not weighed in on the construction of this term.

The parties' disagreement over this claim term centers upon an exchange that occurred during the prosecution of the application that

---

[15]    In its opening and reply claim construction briefs, Amazon proposed a different construction for this term than the one it finally settled on at oral argument. In particular, Amazon originally proposed to construe this term as "based solely on the natural language input without augmentation of any kind (such as additional sources of input or constraints on how the natural language is expressed)." Dkt. No. 143 at 12; Dkt. No. 142 at 25. At oral argument, Amazon streamlined its proposed construction to "based solely on the natural language input without additional sources of input or constraints on how the natural language is expressed." *See* Dkt. No. 162 at 186.

ripened into the '798 Patent concerning whether the issuance of the patent would be invalid as anticipated by U.S. Patent No. 5,966,126 ("Szabo").[16] During prosecution, the applicants distinguished the Szabo system from the claimed invention by noting that Szabo allegedly improved a typical query by "graphically assist[ing] the user in refining the search." Szabo at 6:55-65. The applicants described the input in Szabo as

> graphically assist[ing] the user in refining the search. That is, his input is not a natural language input in that it is not solely a natural language query input. It is an augmented query which provides structure and content not present in a true natural language input.

Dkt. No. 142-5 at 38 (emphasis in original). The inventors argued that "[c]learly, within the context of the disclosed and claimed subject matter, Szabo does not, in fact, provide a natural language query input or perform a search based (only) on that input." *Id.* Instead, they argued, the invention disclosed in the Szabo patent augments the query by way of a significantly altered derivative version of the natural language input, the purpose of which was to provide structure and content not present through the natural language input. *Id.* at 37-39. The phrase "without augmentation" was added during prosecution to overcome a rejection by the examiner based

---

[16]    The Szabo patent is found in the record at Dkt. No. 143-8.

upon Szabo. *Id.* at 33.

Amazon apparently agrees that the court correctly resolved the particular dispute presented in the *Apple* litigation concerning this term.[17] *See* Dkt. No. 142 at 25. Amazon goes on, however, by proposing to specifically exclude two potential means of augmentation that are not referenced in Claim 1, including "additional sources of input" and "constraints on how the natural language is expressed." It is true, as Amazon argues, that those two examples represent potential types of augmentation. The addition of these examples of augmentation, however, would render the language of Claim 7, which is dependent upon Claim 1, superfluous. That claim provides as follows:

> **7.** The method of claim **1** wherein providing a natural language query input by the user includes providing a natural language query input by the user without constraining said query grammatically or structurally.

'798 Patent, 37:8-11. Inclusion of Amazon's proposed qualifier would therefore render that claim superfluous and, accordingly, would violate the doctrine of claim differentiation. *See Comark Commc'ns, Inc. v. Harris*

---

[17]    In *Apple*, the parties focused on whether "without augmentation" precludes any supplementation of the natural language input or, instead, precludes only supplementation by the user through the addition of information or structure, as plaintiffs in that case argued.

*Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) ("There is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims. To the extent that the absence of such difference in meaning and scope would make a claim superfluous, the doctrine of claim differentiation states the presumption that the difference between claims is significant.").

I find, moreover, that the inclusion of the additional language is unnecessary since the claim already makes it clear, by way of the qualifier "without augmentation," that the search being performed must be based solely on the natural language input. I find it unnecessary, and unsupported, to include the additional qualifiers now proposed by Amazon. I therefore recommend that the construction of this term be consistent with that reached in *Apple*, and that it be construed to mean "based solely on the natural language input without augmentation."

## 2.    Result of the natural language input[18]

| Plaintiff's Proposed Construction | Amazon's Proposed Construction | Court's Construction |
|---|---|---|
| No construction necessary, or alternatively given plain and ordinary meaning | Result of the natural language input alone, without additional sources of input or constraints on how the natural language is expressed | No construction necessary |

Amazon insists that this claim term, which is found in Claim 9, be construed to specifically exclude any other inputs aside from the natural language input. *See, e.g.,* Dkt. No. 142 at 27. As it argued with respect to Claim 1's "without augmentation" claim term, Amazon relies on the patent applicants' representations during prosecution distinguishing Szabo from the '798 Patent. *Id.* According to Amazon, the applicants argued that the limitation set forth in Claim 9 must "preclude other inputs" beyond the natural language, and that "[o]therwise, logically speaking, the result would not be 'of the natural language input' but of something else." Dkt. No. 142-5 at 38-39.

For the same reason that I did not impose any further limits on this

---

[18]    In the *Apple* litigation, Apple urged that the term "of the natural language input," appearing in Claim 9, should be construed the same as the term "based on the input, without augmentation," found in Claim 1. *See Apple*, No. 13-CV-0633, Dkt. No. 104 at 18 n.7. Because the two claims are independent, I found no reason to construe the two terms identically and rejected Apple's invitation in that regard. *Id.* In that decision, ultimately there was no construction of the term "of the natural language input" from Claim 9.

claim term in *Apple*, I decline Amazon's invitation to do so with regard to Claim 9. Once again, to accept Amazon's position would violate the doctrine of claim differentiation. Moreover, in an effort to distinguish Szabo during patent prosecution, the inventors purposely amended Claim 1 to include "without augmentation" but did not similarly amend Claim 9.

To the extent that Amazon is relying on the patent prosecution history to find disclaimer of any augmentation or constraints, this argument fails. As was discussed above in Part III.A.1., a claim term will be afforded a different meaning other than its ordinary one when the patentee disavows the full scope of the term either in the patent specification or during prosecution of the patent application. *See, e.g., SpeedTrack*, 998 F.3d at 1377-78. "A disavowal must be clear, but it need not be explicit." *Techtronic Indus. Co. Ltd.*, 944 F.3d at 907 (internal quotation marks omitted). "Disavowal may be inferred from clear limiting descriptions of the invention in the specification or prosecution history," or "an inventor may . . . disavow claim scope by distinguishing the claimed invention over the prior art." *Id.* (internal quotation marks omitted). This exception to the general rule that patent terms should be given their ordinary meaning is both narrow and exacting. *Thorner*, 669 F.3d at 1366-67.

In this case, the record does not reflect the applicants' clear intention

to cabin the natural language input as strictly as Amazon now proposes. In my view, Amazon's reliance on the patent applicants' statements during patent prosecution is misplaced. The statements made by the applicants were in specific reference to Szabo's prior art – an invention that graphically assists the user in refining the search – and, therefore, the query is augmented in an effort to provide structure and content. Dkt. No. 142-5 at 38. The applicants further explained that Szabo's system "receive[s] an input which is a significantly altered derivative of a natural language input, at best, augmented by a superimposed logic structure. By contrast the present invention [the '798 Patent] allows the natural language queries (input) to be constructed in any way a human user might cho[o]se to do, without re-structuring or augmentation." *Id.* Because the applicants' statements were in reference to a specific prior art, I do not find they rise to the level of disavowal.

Based upon the foregoing, I recommend that the court reject Amazon's limiting construction of this term and decline to construe the term because it is readily understood by a POSITA.

3. <u>Metadata database</u>

| Plaintiff's Proposed Construction | Amazon's Proposed Construction | Court's Construction |
|---|---|---|
| Database including information about structuring, using, or interpreting data | Collection of persistently stored data that has a searchable organizational scheme and includes information about structuring, using, or interpreting data[19] | Collection of stored data that has a searchable organizational scheme and includes information about structuring, using, or interpreting data |

The next claim term in dispute, "metadata database," appears in both independent Claim 1 and independent Claim 9, as well as the remaining nineteen dependent claims.

The parties do not seriously dispute that the two words that comprise this claim term, "metadata" and "database," are readily understood by persons of ordinary skill in the art. One court has observed that metadata is "data about data," and, in the context of addressing the metadata of a document, has described it as

> electronically-stored evidence that describes the history, tracking, or management of an electronic document. It includes the hidden text, formatting codes, formulae, and other information associated with an electronic document.

---

[19]    Amazon originally proposed a slightly different construction of this term, *see* Dkt. No. 129 at 3. By the time it filed its opening construction brief, however, Amazon had modified its proposed definition. *See, e.g.,* Dkt. No. 142 at 28; Dkt. No. 142-14 at 47.

*Aguilar v. Immigration & Customs Enforcement Div. of United States Dep't of Homeland Sec.*, 255 F.R.D. 350, 354 (S.D.N.Y. 2008) (internal quotation marks and citations omitted).

This description of a document's metadata, while not precisely analogous, is similar to that referred to in the '798 Patent specification. For example, the patent describes the metadata available to be searched as part of the natural language interface's natural language processing includes "cases, keywords, information models, and database values." '798 Patent, 8:51-54. To those of ordinary skill in the art, these all represent information about structuring, using, or interpreting data. Plaintiffs' suggested construction, which proposes that a metadata database is simply a database consisting of metadata, which in turn includes information about structuring, using, or interpreting data, is consistent with the '798 Patent specification. '798 Patent, 16:13-49.

Amazon does not challenge the court's construction of "metadata database" rendered in the *Apple* litigation insofar as it referred to "metadata" as including information about structuring, using, or interpreting data. Amazon correctly notes, however, that I did not construe the term "database" in *Apple*. *See Apple*, No. 13-CV-0633, Dkt. No. 269 at 67 n.35. In my summary judgment decision in the *Apple* litigation, I pointed out that

various courts have found the ordinary and customary meaning of database to be an "organized collection of electronic information" or "structured set of data." *See id.* (citing *Vasudevan Software, Inc. v. Int'l Bus. Mach. Corp.*, No. 09-CV-5897, 2011 WL 196884, at *1, 2 (N.D. Cal. Jan. 20, 2011) (concluding that "database" is "a structured set of data"); *Visicu, Inc. v. iMDsoft, Ltd.*, No. 07-CV-4562, 2009 WL 1291330, at *12 (E.D. Pa. May 7, 2009) (concluding that a database is "an organized collection of electronic information"); *Transcenic, Inc. v. Google, Inc.*, 7 F. Supp. 3d 405, 411, (D. Del. 2013) (finding that a "database" is "a collection of data organized for search and retrieval by a computer")).

Dr. Shwartz, plaintiffs' expert, generally agrees with a definition offered by Dr. Jaime Carbonell in the *Apple* litigation, defining databases as "organized electronic stores of information." Dkt. No. 142-15 at 11. That definition is consistent with both caselaw and the construction of the term that would have been understood by a POSITA at the time that patent was issued.

One major point of contention over this term appears to be whether, as Amazon argues, the term must refer to a collection of "persistently" stored data. According to Dr. Sacerdoti, the concept of persistency specifically excludes storage of data in volatile random access memory.

41

Dkt. No. 147-3 at 6. As Dr. Shwartz responds, however, there is no support for the narrowing that Amazon now proposes, beyond what a POSITA would understand its plain and ordinary meaning to be.[20] Dkt. No. 142-15 at 22.

While acknowledging that defining "database" could be viewed as somewhat redundant, when considering the claims, and in order to aid the factfinder at trial in understanding the term, I recommend that "metadata database" be construed as "collection of stored data that has a searchable organizational scheme and includes information about structuring, using, or interpreting data."

---

[20]    According to Dr. Shwartz, at the time of the invention there were several examples of in-memory databases, such as db_VISTA/Raima and DataBlitz, where data could be accessed from a computer memory rather than disk drives. Dkt. No. 142-15 at 22.

### 4.    Case information/case

Case Information

| Plaintiff's Proposed Construction | Amazon's Proposed Construction | Court's Construction |
|---|---|---|
| Information about prior instances of use or the natural language processing method | Indefinite | Information about prior instances of use or the natural language processing method |

Case

| Plaintiff's Proposed Construction | Amazon's Proposed Construction | Court's Construction |
|---|---|---|
| A prior use of the natural language processing method | Indefinite | A prior use of the natural language processing method |

The term "case information" appears in both independent Claims 1 and 9 of the '798 Patent. The parties agree that construction of the term "case information" will be determinative of the proper construction of the related term "case," which, in its plural form, is found in Claims 14 and 17. Dkt. No. 129 at 6 n.4. Plaintiffs have proposed the construction the court adopted in the *Apple* litigation, which was also adopted by the PTAB. Dkt. No. 143-4 at 6-7; Dkt. No. 143-5 at 4-7, 14-17; Dkt. No. 143-7 at 10-11. Aside from arguing indefiniteness, Amazon has not taken a position regarding the proper construction of this term.

With respect to its indefiniteness argument, Amazon argues that plaintiffs' statements before the PTAB in response to Amazon's IPR

petition contradict their proposed construction of "case information." Dkt.

No. 142 at 22. In particular, according to Amazon, in an effort to

distinguish a piece of prior art (Meng),[21] plaintiffs argued that Meng did not

disclose the claimed "case information" of the '798 Patent because Meng

"only stores information consisting of the users clarifying input." Dkt. No.

142 at 22 (referencing Dkt. No. 142-9 at 49); *see also* Dkt. No. 153 at 10.

Amazon has interpreted this statement to mean that "information

consisting of the user's clarifying input" is not case information, a

conclusion which is in direct conflict with the '798 Patent specification.[22]

*See* Dkt. No. 142 at 22 ("It is unclear what remains in the scope of 'case

information' once users' clarifications are excluded."); Dkt. No. 153 at 10.

In my view, Amazon's reading of plaintiffs' explanation is a tortured one

that ignores the context in which the explanation was offered.

　　Meng describes a "rote-based" learning system that prompts the

user for information, and the information is then processed based on the

user's response, rather than any prior use of the natural language

---

[21]　　The Meng prior art consists of a technical report describing an NLI or processing system "as an extension of an existing Hi-level Query Formulator for SQL series." *See* Dkt. No. 142-10 at 29.

[22]　　Indeed, the '798 Patent repeatedly explains that information consisting of a user's clarifying input is case information. '798 Patent, 5:30-37, 8:5-19, 17:58-63, 20:34-51, 31:50-56, 34:28-38, 35:62-63—36:1-2, 36:18-25.

processing method. Dkt. No. 142-9 at 50. In their IPR response, plaintiffs noted that Meng "only stores information consisting of the user's clarifying input, as opposed to any self-learning or storage of past cases (or use of said case information)." Dkt. No. 143-10 at 49-50. Thus, according to plaintiffs, while Meng stores clarifying information to "update statistics for the next time," the '798 Patent stores information in the form of a case: a problem definition, a solution, and optionally an outcome. *Id.* at 49; *see also* Dkt. No. 144 at 17-20. Thus, while case information can include clarifications from users, that is not the full permissible extent of case information.

This is consistent with plaintiffs' expert, Dr. Shwartz, who has uniformly taken the position that user dialogues and the result of the user dialogues can be stored as part of a case. Dkt. No. 147-2 at 120:6-10; Dkt. No. 142-15 at 18-19. Indeed, Dr. Shwartz specifically noted that "information from a user clarification can become part of the case information when stored by the NLP system with the intention of making it available to the natural language query process to help it resolve meaningful term ambiguities in future queries. Not just any information from a user clarification, however, is case information." Dkt. No. 144 at 17. Moreover, the PTAB rejected Amazon's argument that "case information"

excludes clarifications from the user. *See* Dkt. No. 143-5 at 5-6.

Accordingly, for the foregoing reasons, I adopt the claim
constructions of these two terms rendered in the *Apple* litigation, and
recommend the term "case information" to be construed as "information
about prior instances of use of the natural language method," and that
"case" be similarly construed, to mean "a prior use of the natural language
processing method."

### 5.    Provide determination of a result

| Plaintiff's Proposed Construction | Amazon's Proposed Construction | Court's Construction |
|---|---|---|
| No construction necessary, or alternatively given plain and ordinary meaning | Output, to a user, a result | No construction necessary |

The last term to be construed appears in Claim 9 of the '798 Patent
and was not addressed in the *Apple* litigation. Plaintiffs urge the court to
decline to provide a construction for this term because one is not
necessary. Amazon responds by adding a qualifier to the term.

Claim 1 of the '798 Patent calls for a "result of the search [to be
provided] to the user." '798 Patent, 36:49-50. On its face, Claim 9 does not
similarly specify to whom the resulting determination is provided. *Id.* at
37:28-29. To add, as Amazon urges, a provision indicating that the result
achieved through the process described Claim 9 must be provided to the

user would violate the principle of claim differentiation. *See Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380-81 (Fed. Cir. 2006) (noting the "presumption that each claim in a patent has a different scope"). Because both Claim 1 and Claim 9 are independent claims, it would be improper to import into Claim 9, as Amazon now urges, the additional restriction concerning to whom the result is to be provided.

Amazon's proposed construction also lacks support from the '798 Patent specification. Addressing Figure 2, the specification notes that the processor depicted **202** "receives a natural language query and a plurality of database objects **204**, and produces a query result." '798 Patent, 12:53-55. The specification goes on to provide that "queries may be executed by an SQL search engine, and processor **201** *may* provide query result **203** to user through, for example, a graphical user interface." *Id.* at 13:58-60 (emphasis added). Amazon's construction would therefore eliminate a preferred embodiment and require that the result of the search must always be provided to the user. A construction that excludes a preferred embodiment "is rarely, if ever, correct." *Hill-Rom Servs. v. Striker Corp.*, 755 F.3d 1367, 1379 (Fed. Cir. 2014).

In support of its proposed construction, Amazon also relies upon the prosecution history. Claim 9, which was originally Claim 12 but

renumbered when the '798 Patent was issued, *see* Dkt. No. 142-5 at 11, originally required interpretation of permutations "to determine a result." *Id.* at 69. The patent examiner rejected this claim because it simply "manipulates an abstract idea" and did "not have any post or pre computer process activity." *Id.* at 25. In response to the rejection, the applicants amended the claim to require that the computer "provide a determination," rather than simply "determine a result." *Id.* at 16-17. The applicants then argued, based upon the amended language, that "an output is generated which is representative of an interpretation of the natural language input" and that such output is "hardly a mere abstraction" and is instead a "useful, concrete" result. *Id.* at 20-21. Based upon this exchange, Amazon's expert, Dr. Sacerdoti, contends that a POSITA "would recognize that the only 'useful, concrete' result that arguably occurs 'post computer' in the patented process is that the user receives the output that the computer has generated." Dkt. No. 142-14 at 48 (alteration omitted).

Amazon's reasoning is flawed. As the prosecution history establishes, the inventors argued that Claim 9 was allowable because it included pre-computer processing activity of receiving a natural language input, not post-processing activity of outputting the result to the user. Dkt. No. 142-5 at 20-21. By adding, following a rejection, the limitation

"receiving a natural language input" and changing "determine a result" to "provide a determination of a result" the inventors argued that the output "is generated which is representative of an interpretation of the natural language input." *Id.* at 20. Accordingly, the applicants noted, "there is pre-computer process activity of receiving natural language input." *Id.* at 21.

Based upon the foregoing I recommend that the court reject the suggestion by Amazon that the result being provided in Claim 9 must always be to the user. I further recommend the court not construe this term as proposed by plaintiffs.

## IV.    SUMMARY AND ORDER

After carefully considering the '798 Patent as a whole, including its specification, the prosecution history associated with it, extrinsic materials submitted by the parties, and the arguments of counsel, it is hereby

RECOMMENDED that the court adopt the following claim term constructions:

### A.    Agreed Upon Constructions

| Term | Agreed Upon Construction |
|---|---|
| natural language query input (Claims 1-8) | input that is articulated in a human language in a way that a native speaker could understand and use sensibly |
| natural language query input (Claim 20) | natural language input |
| natural language input (Claims 1-21) | input that is articulated in a human language in a way that a native speaker could understand and use sensibly |
| language-based databases (Claims 1-21) | databases that include and store natural language information |
| database objects (Claims 1-21) | objects included within a database, including but not limited to data types, data instances, database computational operators, data semantics, data structures, data instances or data values, and data operators |
| language-based database objects (Claims 9-21) | database objects in a language-based database |
| Keywords (Claims 1-21) | natural words and phrases that users use to refer to database objects and information model elements in natural articulation |
| information models (Claims 1-21) | webs of concepts for enterprise databases |
| reference dictionary (Claims 4, 14-17) | set of database entries or objects and their relations |
| at least one metadata database comprising at least one of a group of information types comprising: case information; keywords; information models; and database values (Claims 1-8) | at least one metadata database comprising one or more groups of information types including at least one group containing all four of the information types: case information, keywords, information models, and database values |
| a metadata database comprising at least one of a group of information comprising case information, key words, information models, and database values (Claims 9-21) | a metadata database comprising one or more groups of information types including at least one group containing all four of the information types: case information, keywords, information models, and database values |

B.    Disputed Claim Term Constructions

| Term | Court's Construction |
|---|---|
| based on the input, without augmentation (Claims 1-8) | based solely on the natural language input without augmentation |
| metadata database (Claims 1-21) | collection of stored data that has a searchable organizational scheme and includes information about structuring, using, or interpreting data |
| case information (Claims 1-21) | information about prior instances of use or the natural language processing method |
| case (Claims 14-17) | a prior use of the natural language processing method |
| providing, through a user interface, a result of the search to the user (Claims 1-8) | no construction necessary |
| determining a plurality of combinations of the finite number of database objects (Claims 1-8) | no construction necessary |
| resolving ambiguity between the keywords and the plurality of combinations (Claims 5, 6) | no construction necessary |
| identifying a finite number of permutations of the plurality of database objects (Claims 9-21) | no construction necessary |
| interpreting at least one of the permutations to provide determination of a result of the natural language input (Claims 9-21) | no construction necessary |
| provide determination of a result (Claims 9-21) | no construction necessary |
| result of the natural language input (Claims 9-21) | no construction necessary |

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the Clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d),

72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the Clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      September 30, 2021
            Syracuse, New York