IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

RENSSELAER POLYTECHNIC INSTITUTE
and CF DYNAMIC ADVANCES LLC,

      Plaintiffs,

             -vs.-

AMAZON.COM, INC.,

      Defendant.

Case No. 1:18-cv-549-BKS-CFH

**AMAZON'S MEMORANDUM OF LAW**
**<u>IN OPPOSITION TO MOTION TO COMPEL DISCOVERY</u>**

*Of Counsel:*

Joseph R. Re (*pro hac vice*)
Jon W. Gurka (*pro hac vice*)
Jeremy A. Anapol (*pro hac vice*)
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
Telephone: 949-760-0404
Facsimile:  949-760-9502
joe.re@knobbe.com
jon.gurka@knobbe.com
jeremy.anapol@knobbe.com

Colin B. Heideman (*pro hac vice*)
KNOBBE, MARTENS, OLSON & BEAR, LLP
925 Fourth Avenue, Suite 2500
Seattle, WA 98104
Telephone: 206-405-2000
Facsimile:  206-405-2001
colin.heideman@knobbe.com

October 29, 2021

John G. Powers
(Bar Roll No. 508934)
HANCOCK ESTABROOK, LLP
AXA Tower I, Suite 1800
100 Madison Street
Syracuse, NY 13202
(315) 565-4500
jpowers@hancocklaw.com

Counsel for Defendant
AMAZON.COM, INC.

# TABLE OF CONTENTS

INTRODUCTION ------------------------------------------------------------------------------- 1

FACTUAL BACKGROUND------------------------------------------------------------------------ 1

    A.    The Complaint Used a Boundless and Incoherent Definition of
        "Accused Products" ----------------------------------------------------------------- 1

    B.    Plaintiffs' Document Requests Referenced Additional But
        Unidentified "Accused Products" ----------------------------------------------- 1

    C.    Plaintiffs' Infringement Contentions Relied on a New But Still
        Incoherent and Boundless Definition of "Accused
        Instrumentalities"------------------------------------------------------------------- 2

    D.    Plaintiffs Provided a Claim Chart For Only One of the Countless
        "Accused Instrumentalities" ---------------------------------------------------- 3

    E.    Plaintiffs Agreed to Limit the Scope of Their Discovery Requests ------------ 5

    F.    Amazon Produced Discovery Based on the Limited Scope to
        Which the Parties Agreed --------------------------------------------------------- 5

    G.    Plaintiffs' Deposition Notice Relied on a Vague and Boundless
        Definition of "Accused Products"-------------------------------------------------- 5

ARGUMENT------------------------------------------------------------------------------------- 6

    I.    The Discovery Plaintiffs Seek is Improper Because Plaintiffs'
        Infringement Contentions Violate the Local Patent Rules----------------------- 7

        A.    Failure to Provide Proper Contentions Bars Discovery ------------------ 7

        B.    Plaintiffs' Infringement Contentions Are Improper --------------------- 8

            1.    Plaintiffs' Contentions Fail to Identify Each
                Accused Product With Sufficient Specificity -------------------- 9

            2.    Plaintiffs' Chart Fails to Address Each Accused
                Instrumentality ------------------------------------------------------ 9

            3.    Plaintiffs Excuses Are Meritless --------------------------------11

                a.    Different Accused Devices Work In
                    Materially Different Ways --------------------------------11

        b.     Plaintiffs Cannot Meet Their Burden to Show That Any Accused Product Is Representative of All Others----------------------------- 12

        c.     Alleged Similarities Between Accused Products Do Not Excuse a Failure to Identify Each Accused Product--------------------------- 14

        d.     Plaintiffs' Cases Are Inapposite------------------------- 14

        e.     Plaintiffs Fail to Distinguish Amazon's Cases ---------------------------------------------------- 15

II.     Plaintiffs' 30(b)(6) Notice Violates The Federal Rules ----------------------------------- 17

     A.     Sixteen Topics Are Improper Because They Incorporate An Overbroad Definition of "Accused Products" -------------------------------------- 18

        1.     The Definition Is Unbounded-------------------------------------- 18

        2.     The List of Exemplary Products in Plaintiffs' Correspondence Is No Less Deficient ---------------------------- 19

     B.     Seven Topics Are Improper Because They Use Open-Ended Phrasing ----------------------------------------------------------------------------- 19

     C.     Four Topics Are Improper Because They Include Indiscriminate References to Enormous Numbers of Documents -------------------------------- 20

III.    Plaintiffs' Document Requests Violate the Federal Rules -------------------------------- 20

IV.    Plaintiffs' Waiver Argument Is Meritless ----------------------------------------------------- 20

V.     Plaintiffs' Incoherent Allegations Show the Importance of Enforcing the Local Patent Rules------------------------------------------------------------------------------ 21

CONCLUSION ----------------------------------------------------------------------------------------- 21

# TABLE OF AUTHORITIES

*Cases:*                                                                 *Pages(s):*

*Advanced Micro Devices, Inc. v. Samsung Elecs. Co.*,
  No. C 08-986 SI, 2009 WL 1834147 (N.D. Cal. June 24, 2009)----------------------------- 15

*AGA Med. Corp. v. W.L. Gore & Assocs.*,
  Civ. No. 10-3734, 2011 WL 11023511 (D. Minn. Oct. 19, 2011) --------------------------- 14

*Bender v. Freescale Semiconductor, Inc.*,
  No. C 09-1156 PHJ MEJ, 2010 WL 1689465 (N.D. Cal. Apr. 26, 2010) ------------------ 13

*Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo
Bank, N.A.*,
  No. 14-CV-09371 (KPF)(SN), 2017 WL 9400671
  (S.D.N.Y. Apr. 27, 2017) ---------------------------------------------------------------- 17

*CSR Tech. Inc. v. Freescale Semiconductor*,
  No. C-12-02619 RS JSC, 2013 WL 503077 (N.D. Cal. Feb. 8, 2013) --------------------- 13

*Dealer Computer Servs., Inc. v. Curry*,
  No. 12 CIV. 3457 (JMF) (JLC), 2013 WL 499520 (S.D.N.Y. Feb. 7, 2013) -------------- 17

*Dongguk Univ. v. Yale Univ.*,
  270 F.R.D. 70 (D.Conn.2010)------------------------------------------------------------ 17

*DR. Sys., Inc. v. Fujifilm Med. Sys. USA, Inc.*,
  No. 06-cv-417 JLS (NLS), 2008 WL 1734241 (S.D. Cal. Apr. 10, 2008)------------------ 15

*EPOS Techs. v. Pegasus Techs.*,
  842 F. Supp. 2d 31 (D.D.C. 2012) ------------------------------------------------------- 14

*Infineon Techs. v. Volterra Semiconductor*,
  No. C 11-06239, 2013 WL 322570 (N.D. Cal. Jan. 28, 2013) ----------------------------9, 13

*Jane Doe v. Yorkville Plaza Assocs.*,
  No. 92 CIV. 8250 (JGK)(RLE), 1996 WL 343038
  (S.D.N.Y. June 21, 1996) ---------------------------------------------------------------- 17

*Kalis v. Colgate-Palmolive Co.*,
  231 F.3d 1049 (7th Cir. 2000)----------------------------------------------------------- 17

*Kelora Sys., LLC v. Target Corp.*,
  No. C 11-01548 CW (LB), 2011 WL 5444419 (N.D. Cal. Nov. 9, 2011) ------------------ 15

*McBride v. Medicalodges, Inc.*,
    250 F.R.D. 581 (D. Kan. 2008) ------------------------------------------------------------------- 17

*Mediatek, Inc. v. Freescale Semiconductor, Inc.*,
    No. 11-5341 YGR JSC, 2013 WL 588760 (N.D. Cal. Feb. 13, 2013) ----------------- 15, 16

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
    467 F.3d 1355 (Fed. Cir. 2006) ------------------------------------------------------------- 14, 15

*Oracle Am., Inc. v. Google Inc.*,
    No. C 10-03561 WHA, 2011 WL 4479305 (N.D. Cal. Sept. 26, 2011)--------------------- 14

*Realtime Data, LLC v. Morgan Stanley, et al.*,
    No. 1:11-cv-06696, 2012 WL 1711117 (S.D.N.Y. May 10, 2012) -------------------------- 14

*Reed v. Bennett*,
    193 F.R.D. 689 (D. Kan. 2000) ------------------------------------------------------------- 18, 19

*Roesberg v. Johns-Manville Corp.*,
    85 F.R.D. 292 (E.D. Pa. 1980) ------------------------------------------------------------------- 14

*Shared Memory Graphics LLC v. Apple Inc.*,
    No. C-10-02475, 2011 WL 3878388 (N.D. Cal. Sept. 2, 2011)------------------------------- 8

*SPH Am., LLC v. Research in Motion, Ltd.*,
    13cv2320 CAB(KSC) 2016 WL 6304510 (S.D. Cal. June 30, 2016) ----------------- *passim*

*Tech. Properties Ltd. LLC v. Samsung Elecs. Co.*,
    114 F. Supp. 3d 842 (N.D. Cal. 2015) ------------------------------------------------------------ 13

*Tessera Inc. v. Sony Elecs.*,
    2012 U.S. Dist. LEXIS 108771 (D. Del. Aug. 8, 2012) --------------------------------------- 14

*Tri-State Hosp. Supply Corp. v. U.S.*,
    226 F.R.D. 118 (D.D.C. 2005) ------------------------------------------------------------------- 18

*WebSideStory, Inc. v. NetRatings, Inc.*,
    No. 06-cv-408 WQH (AJB), 2007 WL 1109597 (S.D. Cal. Apr. 11, 2007)---------------- 15

*WhitServe LLC v. Comput. Packages, Inc.*,
    No. 3:06-cv-1935, 2013 WL 6169283 (D. Conn. Nov. 22, 2013) --------------------------- 14

*Winfield v. City of New York*,
    No. 15-cv-05236 (LTS) (KHP), 2018 WL 840085
    (S.D.N.Y. Feb. 12, 2018)--------------------------------------------------------------------- 17, 18

*Yama Cap. LLC v. Canon Inc.*,
    No. 12 CIV. 7159(KPF), 2013 WL 6588589 (S.D.N.Y. Dec. 13, 2013)--------- 7, 8, 10, 16

*Rules:*

Federal Rule of Civil Procedure 26 ----------------------------------------------------------- *passim*

Federal Rule of Civil Procedure 30(b)(6) ----------------------------------------------- *passim*

Local Patent Rule 3.1------------------------------------------------------------------ *passim*

## INTRODUCTION

Plaintiffs are not entitled to the discovery they seek until they comply with Local Patent Rules 3.1(b) and (c)(1) for all products accused of infringement.  They have not.  They do not contend that they have.  But once they have, much of their far-reaching requests may (and likely will) become moot, which will narrow this unnecessary dispute or even resolve it altogether.  For this reason, and for the reasons discussed more fully below, Plaintiffs' motion should be denied.

## FACTUAL BACKGROUND

### A.     The Complaint Used a Boundless and Incoherent Definition of "Accused Products."

The complaint accuses Amazon of infringing U.S. Patent No. 7,177,798 ("the '798 patent"), which purportedly allows a person "to input search queries or commands to a device in language they would use in conversation with another person," *i.e.*, "natural language."  (Dkt. No. 1 at ¶¶ 31, 39.)  Amazon allegedly infringes the patent by selling "Accused Products."  (*Id.* at ¶ 54.)  The complaint expressly defines "Accused Products" to have unlimited scope, stating that these products "include, but are *not limited to*," the items in an attached appendix.  (*Id.*; *see also id.* at 25 ("Appendix A").)[1]  The listed items include hundreds of disparate products and services, with no explanation of how any of them allegedly infringe.  (Decl. ¶¶ 2-6.)

### B.     Plaintiffs' Document Requests Referenced Additional But Unidentified "Accused Products."

Plaintiffs' requests for production ("RFPs") include a definition of "Accused Products" that incorporates the boundless infringement allegations in the complaint, and injects further ambiguity by referring to additional, unspecified allegations:

---

[1] Emphasis in quotations is added unless otherwise noted.

> The term "Accused Products" means any product or service accused of infringe-
> ment in Plaintiffs' Complaint filed May 8, 2018 *or otherwise identified by Plain-
> tiffs as allegedly infringing* claims of the '798 Patent[.]

(*E.g.*, Dkt. No. 169-23 at 2.)

Amazon objected to this definition.  For example, Amazon served the following objection

on May 5, 2020:

> Amazon objects to Plaintiffs' proposed definition of "Accused Products" as
> vague.  For example, the proposed definition references "any product or service
> accused of infringement in Plaintiffs' Complaint filed May 8, 2018" but the Com-
> plaint also does not provide a clear definition of which products are accused. . . .

(Dkt. No. 169-4 at 3; *see also, e.g. id.* at 7 (objecting to "references that do not sufficiently iden-

tify a specific product").)  Thus, Amazon notified Plaintiffs of the deficiency in their accusations

*more than seventeen months ago*, and has maintained this objection ever since.

### C.    Plaintiffs' Infringement Contentions Relied on a New But Still Incoherent and Boundless Definition of "Accused Instrumentalities."

On June 30, 2020, Plaintiffs served their infringement contentions.  (Dkt. No. 169-3 at 1.)

The contentions provided a broad definition of "Accused Instrumentalities," covering *any* "natu-

ral language processing technology provided, sold, offered for sale, or used by Amazon"—

irrespective of whether it bears any resemblance to the '798 patent claims.  (*Id.* at 2.)  Without

limiting their "Accused Instrumentalities" definition, Plaintiffs alleged that it covered "*at least ...*

all generations and variations" of the items in two lists.  (*Id.* at 2-3.)  These two lists contain a

wide-ranging collection of products and services with no explanation of how they allegedly prac-

tice the methods claimed in the '798 patent.  (*Id.*)

The first item Plaintiffs listed was "Alexa."  (*Id.*)  Alexa is the name of Amazon's voice

assistant, a cloud-based service that uses artificial intelligence to respond to users' spoken re-

quests.  (Decl. at ¶ 4.)  However, Plaintiffs defined the "Alexa" item in their list to include not

only the voice assistant itself, which is used by consumers, but seven distinct services that are

used primarily by third-party software or hardware developers to make their products work with Alexa.  (Dkt. No. 169-3 at 2; Decl. at ¶ 7.)  Several of these services were not included in Plaintiffs' previous lists of Accused Products.  (*See* Dkt. No. 1 at 25.)  And Plaintiffs never explained how each of these distinct services allegedly infringes the patent claims.  (Dkt. No. 169-3 at 2.)

The infringement contentions listed many other items that Plaintiffs had not identified in their previous accusations.  For example, the contentions listed "Amazon Comprehend," "Amazon Connect," and "Amazon Kendra."  (*Id.*)  These services are all separate from Alexa and from each other, serving three entirely different functions.  (Decl. at ¶ 8.)  The public web sites for these services make clear how different they are from each other and from Alexa.  (*Id.* at ¶¶ 8-9 & footnotes 11-13.)

As another example, the final entry in Plaintiffs' list was "Amazon Web Services" (known as "AWS").  (Dkt. No. 169-3 at 3.)  AWS is a family of *over 200* services for a wide range of technologies, industries, and use cases.  (Decl. at ¶ 9.)  These services perform such diverse functions as building computer games, hosting web sites, testing robots, enabling video conferences, and controlling satellite ground stations.  (*Id.*)  These 200-plus services, by and large, include *no natural language processing at all*.  (*Id.*)  Again, this is clear from the services' public web sites.  (*Id.*, n.15.)  And Plaintiffs' infringement contentions *never explain* how any one of them allegedly infringes the patent.  (Dkt. No. 169-3 at 2.)

### D.    Plaintiffs Provided a Claim Chart For Only One of The Countless "Accused Instrumentalities."

Although Plaintiffs' myriad of boundless accusations cover "*at least* all generations and variations" of several hundred disparate products and services, Plaintiffs' contentions include only a single claim chart.  (Dkt. No. 169-3 at 18.)  The chart fails to address most Accused Instrumentalities *at all*, much less state a plausible factual basis for concluding that every one of

them performs each step of each asserted patent claim.

Plaintiffs' single chart contains two columns. The left column is labeled "'798 Patent" and quotes each element of the asserted patent claims. (*Id.*) The right column is labeled "Amazon Alexa" and purports to identify evidence of infringement by Alexa, as shown below (with annotations added). (*Id.*)



Plaintiffs' contentions contain no chart directed to any product other than Alexa. And even in their single chart, Plaintiffs fail to address all of the services within their seven-part "Alexa" definition. For example, that definition includes "Alexa Consumables," "Alexa In-Skill Purchase," and "Alexa For Business," but none of these are mentioned anywhere in the claim chart (except for the footnote that repeats the definition). (*Id.*, n.3.)

The many *non-Alexa* products that are listed among the Accused Instrumentalities are also addressed nowhere in the chart. (*See generally id.* at Appendix A.) And the products that Plaintiffs never specifically listed, but alluded to with their open-ended categorical definitions, are likewise never addressed. (*Id.*)

In response to Plaintiffs' infringement contentions, Amazon wrote on July 30, 2020 that the "contentions do not provide Defendant with enough information to fully understand the bases for Plaintiffs' infringement allegations[.]" (Ex. A at 3.) In view of Plaintiffs' deficient contentions, Amazon informed Plaintiffs that it would limit its technical document production under L. Pat. R. 3.4 to the functionality that Plaintiffs identified in their single claim chart. (*Id.* at 55.)

### E.      Plaintiffs Agreed to Limit the Scope of Their Discovery Requests.

On November 24, 2020, the parties met and conferred regarding Amazon's technical document production and interrogatory responses.  (Ex. B at 1.)  During this conference, Amazon reiterated its objections to the broad definition of "Accused Products" in Plaintiffs' discovery requests, and Plaintiffs therefore agreed to limit the scope of their requests to the Alexa voice assistant and Amazon's "Echo products" that include Alexa.[2]  (*See, e.g.*, *id.* at 2 (Plaintiffs: "Amazon is willing to supplement this interrogatory if Plaintiffs agree to limit this interrogatory to Amazon's devices that include Alexa.  *We agree to this proposed limitation*, but reserve the right to request additional relevant documents."); Ex. C at 2 (Amazon clarifying that discovery responses pertaining to devices would be limited to "Amazon Echo products").)

### F.      Amazon Produced Discovery Based on the Limited Scope to Which the Parties Agreed.

Consistent with the parties' agreement, Amazon provided extensive discovery of technical, financial, and other information relating to Alexa and the Echo devices.  (Decl. at ¶ 11.)  Amazon also produced discovery pertaining to topics that are independent of the "Accused Products" definition, such as prior art and patent licenses.  (*Id.*)  In total, Amazon produced over 200,000 computer source code documents, and over 80,000 pages of other documents.  (*Id.*)  Amazon also answered nine interrogatories and fifty requests for admission.  (*Id.*)

### G.      Plaintiffs' Deposition Notice Relied on a Vague and Boundless Definition of "Accused Products."

On March 18, 2021, Plaintiffs served Amazon with a 30(b)(6) deposition notice.  (Dkt. No. 169-6.)  During a subsequent conference of counsel, Amazon explained to Plaintiffs that

---

[2] Amazon's Echo products include a variety of devices designed and manufactured by Amazon, many of which allow customers to interact with the Alexa voice assistant.  (*E.g.*, Dkt. No. 169-8; Decl. at ¶ 5.)

many of the topics in the notice were improper for the same reasons that Amazon had explained to Plaintiffs in connection with previous discovery.  (Dkt. No. 169-10 at 2.)  For example, Amazon objected to "[t]he notice's definition of 'Accused Products,' a term that is used in numerous topics" because that definition "is vague and unbounded."  (*Id.*)

In response to Amazon's objections, Plaintiffs proposed to narrow the definition of "Accused Products" in four deposition topics that used this phrase, but ignored the other twelve topics that used the same phrase.  (Dkt. No. 169-12 at 1.)  And even for the four topics they offered to narrow, Plaintiffs did not agree to the same limitations the parties had adopted for previous discovery requests—*i.e.*, limiting the device-related requests to Amazon's Echo devices that include Alexa.  (*See* Dkt. No. 169-7 at 1-2 (explaining overbreadth of device-related requests).)

Amazon explained that even the narrowed definition of "Accused Products" that Plaintiffs proposed remained improper because (1) the definition was unsupported by Plaintiffs' infringement contentions, and (2) the definition failed to identify the matters for examination with "reasonable particularity," as Rule 30(b)(6) requires.  (*Id.* at 1-2.)  Amazon also objected to numerous other deficiencies in Plaintiffs' 30(b)(6) notice that were independent of the "Accused Products" definition.  (*Id.* at 2-3.)

Because Plaintiffs refused to amend their infringement contentions to comply with the Local Rules, and also refused to confine their discovery requests to the accusations charted in their existing contentions, the parties reached an impasse.

## ARGUMENT

Plaintiffs seek to compel corporate deposition testimony on sixteen topics in their deposition notice.  (Dkt. No. 169-1 ("Br.") at 4-5.)  The deposition notice is improper for three reasons.  First, the notice violates the Local Patent Rules because it seeks discovery that is unsupported by Plaintiffs' infringement contentions.  Second, all of the topics at issue incorporate an unbounded

definition of "Accused Products" and therefore fail to "describe with reasonable particularity the matters for examination," as Federal Rule of Civil Procedure 30(b)(6) requires.  Finally, the topics violate Federal Rule of Civil Procedure 26 for various reasons described below.

Plaintiffs also seek to compel discovery in response to dozens of requests for production. (Br. at 4-5.)  This additional document discovery is improper for similar reasons—again, it is unsupported by Plaintiffs' infringement contentions and relies on Plaintiffs' unbounded definition of "Accused Products," thereby violating the Federal and Local Rules.  The Court should deny Plaintiffs' motion to compel.

I.    **THE DISCOVERY PLAINTIFFS SEEK IS IMPROPER BECAUSE PLAINTIFFS' INFRINGEMENT CONTENTIONS VIOLATE THE LOCAL PATENT RULES.**

Local Patent Rule 3.1, which governs the present dispute, is identical in all material respects to the Northern District of California's Patent Local Rule 3-1.  *Compare* L. Pat. R. 3.1 *with* N.D. Cal. Patent L.R. 3-1.[3]  Many district courts have modeled their Local Patent Rules on those adopted in the Northern District of California, and rely on that court's precedent when applying the rules.  *E.g.*, *Yama Cap. LLC v. Canon Inc.*, No. 12 CIV. 7159(KPF), 2013 WL 6588589, at *3, n.4 (S.D.N.Y. Dec. 13, 2013) (noting that "[t]he Rules here track analogous rules in the Northern District of California" and therefore relying on authority from that district).

A.    **Failure to Provide Proper Contentions Bars Discovery.**

"The overriding principle of the Patent Local Rules is that they are designed to make the parties more efficient, to streamline the litigation process, and to articulate with specificity the

---

[3] The Northern District of California's Patent Local Rules are available on the court's web site at https://www.cand.uscourts.gov/rules/patent-local-rules/.  The Northern District of California was the first district to adopt local patent rules, doing so in 2001.  James Ware and Brian Davy, *The History, Content, Application and Influence of the Northern District of California's Patent Local Rules*, 25 Santa Clara High Tech. L.J. 965 (2009) (available at: https://digitalcommons.law.scu.edu/chtlj/vol25/iss4/8).

claims and theory of a plaintiff's infringement claims." *SPH Am., LLC v. Research in Motion, Ltd.*, 13cv2320 CAB(KSC), 2016 WL 6304510, at *1 (S.D. Cal. June 30, 2016); *id.* at *2 (The goal of the Rules is to "streamline discovery and require parties to crystallize their theories early in the case[.]").  To promote these objectives, Rule 3.1 requires patentees to serve detailed "infringement contentions," which must articulate their infringement theories for every element of every asserted patent claim, and *every product* accused of infringement.  L. Pat. R. 3.1.

Allowing patentees to conduct discovery that is unsupported by their disclosures under Rule 3.1 "eviscerates the goal of the Patent Local Rules to streamline discovery" and "would frustrate the very purpose" of the Rules.  *SPH Am.*, 2016 WL 6304510 at *2-3 (quoting *Mediatek, Inc. v. Freescale Semiconductor, Inc.*, No. 11-5341 YGR JSC, 2013 WL 588760, at *2 (N.D. Cal. Feb. 13, 2013)).  Therefore, courts applying Rule 3.1 prohibit patentees from obtaining discovery that is outside the scope of their infringement contentions.  *E.g.*, *id.* at *1; *Yama Cap.*, 2013 WL 6588589, at *3-4; *Infineon Techs. v. Volterra Semiconductor*, No. C 11-06239, 2013 WL 322570, at *5 (N.D. Cal. Jan. 28, 2013); *Shared Memory Graphics LLC v. Apple Inc.*, No. C-10-02475, 2011 WL 3878388, at *7 (N.D. Cal. Sept. 2, 2011) (Courts "routinely" block discovery by plaintiffs who have not complied with Rule 3.1).

Here, Plaintiffs seek to compel discovery based on deposition topics and RFPs that use their broad definition of "Accused Products."  (Br. at 4-5 (topics and RFPs at issue); *supra*, pp. 1, 5.)  But Plaintiffs have failed to provide proper infringement contentions for these Accused Products, as explained below.  Thus, the Local Patent Rules bar the discovery Plaintiffs seek.

### B.    Plaintiffs' Infringement Contentions Are Improper.

Plaintiffs' infringement contentions fail to comply with Rules 3.1(b) and 3.1(c)(1).

### 1.    Plaintiffs' Contentions Fail to Identify Each Accused Product With Sufficient Specificity.

The Local Patent Rules "place the burden of specifically identifying all accused devices on the plaintiff." *SPH Am.*, 2016 WL 6304510, at *1.  Specifically, Rule 3.1(b) requires that the infringement contentions identify "*each* accused apparatus, product, device, process, method, … or other instrumentality ('Accused Instrumentality')" and further requires that the "identification shall be *as specific as possible*." L. Pat. R. 3.1(b).  Each accused product must "be identified by name or model number, if known." *Id.*

Plaintiffs have not met this burden.  Plaintiffs never argue that they identified *each* accused product with sufficient specificity.  (Br. at 11-12.)  Nor could they, because Plaintiffs' contentions rely on a boundless definition of "Accused Instrumentalities" that is not confined to specific product names and model numbers.  (*Supra*, pp. 2-3.)  This definition relies on "broad categorical identification" and "mere representative examples," which the Local Patent Rules "do not tolerate." *See SPH Am.*, 2016 WL 6304510, at *1 (quoting *Infineon*, 2012 WL 6184394, at *3).

Plaintiffs have no real counterargument.  They simply quote the relevant portions of their contentions and assert without support that they are adequate.  (Br. at 11-12.)  But the quoted portions show that the contentions rely on vague, boundless, categorical descriptions rather than specific product names or model numbers for *each* accused product.  (*Id.*)  For example, Plaintiffs' definition of "Accused Instrumentalities"—*i.e.*, "the natural language processing technology provided, sold, offered for sale, or used by Amazon"—is obviously not a specific product name or model number.  (*Id.*)  It is precisely the sort of "broad categorical identification" that the Rules prohibit.  *SPH Am.*, 2016 WL 6304510, at *1-3.

### 2.    Plaintiffs' Chart Fails to Address Each Accused Instrumentality.

Plaintiffs also violate Rule 3.1(c), which requires "a chart identifying specifically where

each limitation of each asserted claim is found within *each* Accused Instrumentality." Plaintiffs never argue that their single chart specifically identifies where each limitation is found within *each* Accused Instrumentality. (Br. at 12-18.) Indeed, because Plaintiffs have not even identified every Accused Instrumentality (as explained above), it would be impossible to show that their chart provided the requisite detail for each one.

Plaintiffs contend that their chart "included information about Amazon's Devices" (Br. at 12), but this flimsy representation fails to satisfy the Rule. Merely including *some* information for *some* devices does not identify "*specifically* where *each* limitation of *each* asserted claim is found within *each* Accused Instrumentality," as the Rule requires.

*Yama Capital* identified the same deficiency in the contentions at issue there. The court in that case applied a rule that is materially identical to Rule 3.1(c). 2013 WL 6588589 at *3. And even though the patentee in *Yama Capital* provided claim charts with *some* information for nine separate cameras, the court found that the charts failed to satisfy the Rule for any of the cameras. *Id.* Thus, the court ruled that "discovery cannot proceed." *Id.* at *18.

Here, the deficiency in Plaintiffs' single claim chart is far more obvious than the deficiency in *Yama Capital*. On its face, the chart is directed to "Alexa" only. (*Supra*, pp. 3-4.) The chart does not even purport to address the other "Accused Instrumentalities" embraced by Plaintiffs' boundless definition. (*Id.*)

Plaintiffs contend that their chart covers all Accused Instrumentalities merely because it contains passing references to some of Amazon's Echo devices (Br. at 12-16), but this argument fails for two reasons. First, these references to Echo devices fail to address *each* Accused Instrumentality as the Rule requires, because Plaintiffs have accused countless non-Echo devices (and many Echo devices that the chart never mentions). (*Supra*, pp. 2-3.) Second, the chart's

references to Echo devices in connection with *some* claim limitations fail to address "*each* limitation of each asserted claim," as the Rule requires.[4]

Because Plaintiffs' single claim chart fails to identify "*specifically* where *each* limitation of *each* asserted claim is found within *each* Accused Instrumentality," it violates Rule 3.1(c).

### 3.    Plaintiffs Excuses Are Meritless.

Plaintiffs argue that their contentions need not provide the specificity required by Rule 3.1(c) because "[e]ach Alexa device works in the same or similar fashion." (Br. at 17.) This argument fails for three reasons. First, different devices that use Alexa work in materially different ways. Second, if Plaintiffs intend to rely on one product as representative of all others, they must *show* that it is representative—not merely allege it. Third, even if Plaintiffs could show that one accused product is representative for purposes of Rule 3.1(c), such a showing would not excuse Plaintiffs' failure to specifically identify each asserted product under Rule 3.1(b).

#### a.    Different Accused Devices Work In Materially Different Ways.

Plaintiffs accusations encompass countless products, many of which have nothing to do with Alexa. (*Supra*, pp. 2-3.) Even among the devices that do interact with Alexa, Echo devices are the only ones that Plaintiffs' claim chart discusses with any degree of specificity. (*See* Br. at 12-16.) And Amazon makes a wide variety of Echo devices, with significant differences between them that are material to the devices' alleged infringement of the '798 patent.

Some devices, such as the Echo Dot, collect input from a user through microphones

---

[4] Plaintiffs' own brief demonstrates that their contentions lack any references to Echo devices for many claim elements. Specifically, the brief includes a table listing their references to Echo devices, and identifying the claim limitations to which those references pertain. (Br. at 12-16.) But this table contains no entries for many claim limitations. For example, the table includes entries for only four limitations of claim 1 and one limitation of claim 9, ignoring the many remaining limitations of these claims.

alone, while other devices, like the Echo Show, collect input through microphones, a camera, and a touch screen. (Decl. at ¶ 5.) These differences in input capabilities are material to the asserted patent claims. For example, the claims require processing a natural language input "without augmentation," and "augmentation" undisputedly encompasses additional sources of input beyond a user's spoken request. (Dkt. No. 148 at 20.) A device like the Echo Show, which relies on camera and touch-screen input, can therefore augment the user's spoken input in ways that other devices, like the Echo Dot, cannot. Accordingly, any evidence that Plaintiffs' might rely on to allege that devices like the Echo Dot process natural language "without augmentation" would not apply to devices like the Echo Show.

For other Echo devices, the differences are even more significant. For example, the Echo Connect is a device used to place calls over a telephone line. (Decl. at ¶ 5.) This device is *controlled by* Alexa running on a separate device but does not *include* Alexa itself and thus performs *no natural language processing*. (*Id.*) Plaintiffs expressly accuse the Echo Connect of infringement. (Br. at 3.) But this accusation is frivolous because the Echo Connect—as a device that never processes natural language—cannot perform even one step of the asserted patent claims, let alone all of them. And Plaintiffs have never explained why they think it infringes the patent.

If Plaintiffs had attempted to comply with Rule 3.1(c) and provide a claim chart addressing "*each* Accused Instrumentality," they undoubtedly would have realized at least some of their mistakes and dropped their frivolous accusations against many accused devices. But instead, they are demanding pointless and indiscriminate discovery about all of these devices while refusing to provide the disclosure that the Rule requires.

   **b. Plaintiffs Cannot Meet Their Burden to Show That Any Accused Product Is Representative of All Others.**

"Rule 3-1 mandates that a plaintiff's infringement contentions must be sufficient … to

raise a reasonable inference that *all* accused products infringe." *Infineon*, 2013 WL 322570, at

*3 (internal quotation marks omitted).  A plaintiff cannot satisfy this Rule simply by asserting

that one chart is representative of many accused products.  *Bender v. Freescale Semiconductor,*

*Inc.*, No. C 09-1156 PHJ MEJ, 2010 WL 1689465, at *3 (N.D. Cal. Apr. 26, 2010); *CSR Tech.*

*Inc. v. Freescale Semiconductor*, No. C-12-02619 RS JSC, 2013 WL 503077, at *4 (N.D. Cal.

Feb. 8, 2013).  Instead, a plaintiff "must either chart [each of the products] or *demonstrate* how

they are substantially similar to the allegedly representative [product] for purposes of *each as-*

*serted claim*." *Tech. Properties Ltd. LLC v. Samsung Elecs. Co.*, 114 F. Supp. 3d 842, 849-850,

852 (N.D. Cal. 2015) (denying patentee's motion to compel where the infringement contentions

used allegedly representative claim charts).  Here, Plaintiffs baselessly allege that their chart is

representative, but have failed *demonstrate* that it properly represents all of the countless prod-

ucts they accuse of infringement.

According to Plaintiffs, their single chart is representative merely because Amazon's

terms of use for Alexa provide a single definition for "Alexa Enabled Product." (Br. at 17.)  Ini-

tially, this argument fails because many of the accused products here have nothing to do with

Alexa.  (*Supra*, pp. 2-3.)  More importantly, Plaintiffs cannot rely on Amazon's terms of use be-

cause these terms have no bearing on how any product allegedly infringes the '798 patent.  The

fact that all "Alexa Enabled Products" are subject to the same terms of use obviously does not

show that all of these products perform the same allegedly infringing steps in the same way.  To

the contrary, different accused products work in much different ways.  (*Supra*, p. 11.)

Here, the only technical similarity that Amazon's terms of use allegedly identify for all

Alexa Enabled Products is that these products require "an internet connection." (Br. at 18.)  But

the '798 patent does not cover all use of the internet.  It covers only the specific natural language

processing methods recited in its claims.  And Amazon's terms of use say nothing about how any device allegedly performs any step of the patent claims.  Thus, the terms of use fail to raise a reasonable inference that *all* accused products infringe.

### c. Alleged Similarities Between Accused Products Do Not Excuse a Failure to Identify Each Accused Product.

Even if Plaintiffs had carried their burden to show that all accused products work the same way and that a single claim chart addressing these products could satisfy Rule 3.1(c), Plaintiffs contentions would still violate Rule 3.1(b).  As a matter of law, a plaintiff cannot satisfy Rule 3.1(b)'s requirement to specifically identify each accused product by using "mere representative examples." *SPH Am.*, 2016 WL 6304510, at *1.  Thus, the contentions here violate the Local Patent Rules, and Plaintiffs are not entitled to the discovery they seek.  *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011 WL 4479305, at *2 (N.D. Cal. Sept. 26, 2011) (representative examples failed to satisfy Rule 3.1(b) where plaintiff accused a broad category of "mobile devices running Android").

### d. Plaintiffs' Cases Are Inapposite.

None of Plaintiffs' cases support their position here.  (Br. at 7-8).  Specifically, *Tessera Inc. v. Sony Elecs.*, 2012 U.S. Dist. LEXIS 108771, at *11 (D. Del. Aug. 8, 2012) is inapposite because it comes from a district that has not adopted the local rules at issue here.  Many other cases that Plaintiffs cite are similarly inapposite because they do not apply the same local rules.[5]

Plaintiffs also cite *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355,

---

[5] Namely, *WhitServe LLC v. Comput. Packages, Inc.*, No. 3:06-cv-1935, 2013 WL 6169283 (D. Conn. Nov. 22, 2013); *EPOS Techs. v. Pegasus Techs.*, 842 F. Supp. 2d 31, 33 (D.D.C. 2012); *Realtime Data, LLC v. Morgan Stanley, et al.*, No. 1:11-cv-06696, 2012 WL 1711117 (S.D.N.Y. May 10, 2012); *AGA Med. Corp. v. W.L. Gore & Assocs.*, Civ. No. 10-3734, 2011 WL 11023511 (D. Minn. Oct. 19, 2011); *Roesberg v. Johns-Manville Corp*., 85 F.R.D. 292 (E.D. Pa. 1980).

1366 (Fed. Cir. 2006).  But that case supports Amazon, not Plaintiffs, because it *affirmed* an application of the Northern District of California's Patent Local Rules that resulted in a grant of summary judgment for the defendant.  *Id.* at 1365-66.  And the Federal Circuit expressly recognized the need to "pin down the plaintiff's theories of liability … thus *confining discovery* and trial preparation to information that is pertinent to the theories of the case." *Id.* at 1365.

Plaintiffs also cite a few cases from districts with local patent rules similar to those at issue here, but those cases are inapposite because they are outdated and outweighed by more recent authority from the same districts.  For example, Plaintiffs cite *Advanced Micro Devices, Inc. v. Samsung Elecs. Co.,* No. C 08-986 SI, 2009 WL 1834147, at *3 (N.D. Cal. June 24, 2009) ("*AMD*").  (Br. at 8-9.)  But more recent cases from the same district—including one in which Amazon defeated a motion to compel—have declined to follow *AMD*.  *E.g., Kelora Sys., LLC v. Target Corp.*, No. C 11-01548 CW (LB), 2011 WL 5444419, at *2 (N.D. Cal. Nov. 9, 2011) (denying motion to compel discovery from Amazon and distinguishing *AMD* because it "was governed by the old local patent rules," among other reasons); *Mediatek*, 2013 WL 588760, at *3 (following *Kelora* and distinguishing *AMD* on the same ground).

Similarly, Plaintiffs cite the outdated cases of *DR. Sys., Inc. v. Fujifilm Med. Sys. USA, Inc.*, No. 06-cv-417 JLS (NLS), 2008 WL 1734241 (S.D. Cal. Apr. 10, 2008) and *WebSideStory, Inc. v. NetRatings, Inc.*, No. 06-cv-408 WQH (AJB), 2007 WL 1109597, at *2 (S.D. Cal. Apr. 11, 2007).  Both of these cases are even older than *AMD*, and therefore predate the rule change described in *Kelora* and *Mediatek*.  Unsurprisingly, later cases from the same district have reached the opposite result and support Amazon's position here.  *E.g.*, *SPH Am.*, 2016 WL 6304510 at *1-3.

### e.    Plaintiffs Fail to Distinguish Amazon's Cases.

Plaintiffs argue that *Yama Capital*, which Amazon cites, is inapposite because it involved

a motion to strike.  (Br. at 9-10.)  But that procedural posture did not prevent the court from rul-ing on the question of law at issue here.  The court held that "[w]here a plaintiff's Infringement Contentions are inadequately specific, the plaintiff *cannot obtain discovery* without amending its contentions to provide more detail."  *Yama Cap.*, 2013 WL 6588589, at *4; *see also id.* at 18 ("*discovery cannot proceed* under the Rules without valid Infringement Contentions").

Plaintiffs also discuss *SPH America*.  (Br. at 10.)  In doing so, they concede that the court there denied the patentee's motion to compel discovery.  (*Id.*)  But Plaintiffs argue that *SPH* is distinguishable because the patentee there sought discovery on broad categories of products, without identifying all those products by name.  (*Id.*)  Plaintiffs ignore, however, that the patent-ee in *SPH* also "listed over fifty products by name" in its infringement contentions—providing more specificity than Plaintiffs have here.  2016 WL 6304510, at *1.  The court in *SPH* found that the patentee's specificity about *some* accused products failed to justify discovery into *all* ac-cused products.  *Id.* at *3 ("Such a view would frustrate the very purpose behind the Patent Local Rules.").  Here, as in *SPH*, Plaintiffs have identified *some* accused products by name, but are seeking discovery far beyond these specific products.  And the contentions here are even more deficient than those in *SPH*, because Plaintiffs' single claim chart fails to fully address even the few products that Plaintiffs' contentions specifically identified.

Plaintiffs fail also to distinguish *Mediatek*, 2013 WL 588760, at *2.  Plaintiffs argue that *Mediatek* is distinguishable because the patentee there sought discovery on products it had not specifically identified in its infringement contentions.  (Br. at 10.)  But this is no distinction at all, because the same is true here.  Plaintiffs are seeking discovery that goes far beyond any products that are specifically identified in their infringement contentions.  Thus, the case law

makes clear that Plaintiffs have violated the Local Patent Rules and the Court should deny their motion.

## II.   PLAINTIFFS' 30(B)(6) NOTICE VIOLATES THE FEDERAL RULES.

"Like other forms of discovery, a Rule 30(b)(6) Notice is subject to limitations under Rule 26 of the Federal Rules of Civil Procedure." *Dealer Computer Servs., Inc. v. Curry*, No. 12 CIV. 3457 (JMF) (JLC), 2013 WL 499520, at *1 (S.D.N.Y. Feb. 7, 2013) (quoting *Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 71 (D.Conn. 2010)).  Rule 26, as amended in 2015, requires that all discovery be "relevant" and "proportional to the needs of the case."  Thus, a deposition notice served under Rule 30(b)(6) may not seek irrelevant or disproportional discovery.  *See Winfield v. City of New York*, No. 15-cv-05236 (LTS) (KHP), 2018 WL 840085, at *5 (S.D.N.Y. Feb. 12, 2018); *see id.* at *8 (restricting scope of 30(b)(6) deposition because "the Notice is overbroad").

Rule 30(b)(6) itself requires a deposition notice to describe the topics for examination with "reasonable particularity." To ensure that depositions under this Rule are effective, many courts have stated that "the requesting party must take care to designate, with *painstaking specificity*, the particular subject areas that are intended to be questioned."  *E.g.*, *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1057 n.5 (7th Cir. 2000); *McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 584 (D. Kan. 2008) (same); *Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, N.A.*, No. 14-CV-09371 (KPF)(SN), 2017 WL 9400671, at *1 (S.D.N.Y. Apr. 27, 2017) (same); *see also Jane Doe v. Yorkville Plaza Assocs.*, No. 92 CIV. 8250 (JGK)(RLE), 1996 WL 343038, at *8 (S.D.N.Y. June 21, 1996) (rejecting motion for 30(b)(6) deposition where topics "failed to properly focus [the plaintiff's] inquiry").

Here, the deposition topics identified in Plaintiffs' motion to compel violate both Rule 26 and Rule 30(b)(6).[6]  For this additional reason, the Court should deny Plaintiffs' motion.

### A.     Sixteen Topics Are Improper Because They Incorporate An Overbroad Definition of "Accused Products."

Topics 1, 3, 12, 15, 18, 21, 29, 33, 34, 37, 38, 41-44, and 48 rely on a definition of "Accused Products" that lacks particularity and is disproportionate to the needs of this case.

### 1.     The Definition Is Unbounded.

Plaintiffs define "Accused Products" to mean "any product or service accused of infringement in Plaintiffs' Complaint filed May 8, 2018 *or otherwise identified by Plaintiffs as allegedly infringing* claims of the '798 Patent, including *but not limited to* [various categories]." (Dkt. No. 169-6 at 3-4.)  This definition includes anything Plaintiffs have ever accused of infringing the patent, anywhere.  Thus, to determine its scope, Amazon would have to review (and attempt to decipher) everything Plaintiffs have ever said.  Because the definition is defined by reference to unspecified external sources, it fails to "describe with reasonable particularity the matters for examination" under Federal Rule of Civil Procedure 30(b)(6).

Further, the definition lacks particularity because it uses the open-ended phrase "including but not limited to."  Numerous courts have held that deposition topics using this phrase lack particularity.  *E.g.*, *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000).  When this phrase is used, "the defendant cannot identify the outer limits of the areas of inquiry noticed," and therefore "compliant designation is not feasible."  *Id.*; *Winfield*, 2018 WL 840085, at *5 ("[T]opics should not be listed as 'including but not limited to;' rather, they must be explicitly stated."); *Tri-*

---

[6] Amazon addresses only the specific topics identified in Plaintiffs' motion.  (Br. at 4-5.)  Other topics not identified in Plaintiffs' motion are objectionable for additional reasons that are not addressed here.  (*E.g.*, Dkt. No. 169-7 at 2-3; Dkt. No. 169-12 at 1-2.)

*State Hosp. Supply Corp. v. U.S.*, 226 F.R.D. 118, 125 (D.D.C. 2005) ("Listing several categories and stating that the inquiry may extend beyond the enumerated topics defeats the purpose of having any topics at all.").

> **2.    The List of Exemplary Products In Plaintiffs' Correspondence Is No Less Deficient.**

Plaintiffs argue that they clarified their "Accused Products" definition by providing a list of specific products in a letter.  (Br. at 20.)  But this list of products compounds the deficiencies in Plaintiffs' definition because the list identifies only "Exemplary" products, and is therefore unbounded—just like the definition that it purports to clarify.  (Dkt. No. 169-19 at 6.)  Accordingly, even if the list were incorporated into Plaintiffs' "Accused Products" definition, that definition would still fail to "identify the outer limits of the areas of inquiry noticed," as Rule 30(b)(6) requires.  *Reed*, 193 F.R.D. at 692.

Plaintiffs' list of exemplary products also violates Rule 26(b)(1), because it includes devices that have no relevance to the claims or defenses in this case.  For example, the list includes the "Echo Connect," "Echo Glow," and "Echo Link."  (Dkt. No. 169-19 at 6-7.)  None of these devices processes any natural language.  (Decl. at ¶ 5.)  And Plaintiffs never allege otherwise, because they have not bothered to chart any of these products in their infringement contentions. Such devices have no relevance to the alleged infringement of Plaintiffs' natural language processing patent.

Because Plaintiffs' definition of "Accused Products" is unbounded and covers plainly irrelevant subject matter, the Court should reject Plaintiffs' attempt to compel testimony about it.

> **B.    Seven Topics Are Improper Because They Use Open-Ended Phrasing.**

Topics 12, 15, 18, 21, 29, 34, and 37 use the unbounded phrase "including, but not limited to" outside of the "Accused Products" definition.  (Dkt. No. 169-6 at 8-12.)  For this addi-

tional reason, these topics lack reasonable particularity and violate Rule 30(b)(6).

### C. Four Topics Are Improper Because They Include Indiscriminate References to Enormous Numbers of Documents.

Topics 12, 15, 18, and 29 are defined by reference to Amazon's document production. (Dkt. No. 169-6 at 7-12.)  These topics are improper because they cover more documents than any witness could feasibly be prepared to testify about, and Amazon cannot clearly discern which specific documents are covered by the generalized categories to which the topics refer. For example, topic 12 covers (among other things) all "technical" documents in Amazon's production.  (*Id.* at 9.)   But Amazon has produced hundreds of thousands of technical documents. (Decl. at ¶ 11.)  Such expansive topics lack the particularity that Rule 30(b)(6) requires.

## III.   PLAINTIFFS' DOCUMENT REQUESTS VIOLATE THE FEDERAL RULES.

The same overbroad and unbounded definition of "Accused Products" that is incorporated into Plaintiffs' deposition topics is also incorporated into numerous document requests. This definition causes the document requests that incorporate it to violate Rule 26(b)(1) because the requests would require Amazon to collect countless documents that are irrelevant and disproportionate to the needs of this case.  For example, these document requests would require Amazon to collect information about products that never perform any natural language processing—including Echo Connect, Echo Glow, Echo Link, and over two-hundred services that are part of AWS.  (*See* Decl. at ¶¶ 5, 9.)  Such information has no relevance to this case.

## IV.   PLAINTIFFS' WAIVER ARGUMENT IS MERITLESS.

Plaintiffs argue that Amazon has waived any objection to their unbounded and incoherent definition of "Accused Products" because Amazon has been able to understand *parts* of that definition.  (Br. at 22-23.)  This argument is meritless.  Amazon's objections are not premised on a complete inability to understand any part of the definition.  Rather, Amazon objects because

(1) understanding the *full scope* of the definition is impossible, (2) certain allegations *within* the definition are plainly frivolous, and (3) Plaintiffs failed to provide infringement contentions that identify and chart all products within the definition.  (*Supra*, pp. 7-20.)

## V. PLAINTIFFS' INCOHERENT ALLEGATIONS SHOW THE IMPORTANCE OF ENFORCING THE LOCAL PATENT RULES.

As set forth above, Plaintiffs have had at least four chances to clearly describe the products accused of infringement in this case: (1) in their complaint, (2) in their discovery requests, (3) in their infringement contentions, and (4) in the parties' correspondence.  At every turn, Plaintiffs' description of the accused products has changed.  And all four of Plaintiffs' descriptions have been open-ended, leaving Amazon unable to discern any fixed boundaries.

Amazon served detailed objections, beginning in May 2020, that explained the deficiencies in Plaintiffs' accusations.  After more than seventeen months, during which Amazon has already produced hundreds of thousands of documents, Plaintiffs still refuse to identify each product they are accusing of infringement and focus discovery on those specific products.  Plaintiffs' continued insistence on pursuing limitless discovery is untenable.

If Plaintiffs had attempted to comply with the Local Patent Rules from the outset by (a) identifying *each* Accused Instrumentality with sufficient specificity and (b) providing a claim chart showing where *each claim element* was found in *each Accused Instrumentality*, they would have quickly recognized that many of the products they carelessly accuse of infringement never perform even the first step of the asserted patent claims.  Having persisted in their disregard for the Rules, Plaintiffs are not entitled to any additional discovery.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion to compel.

October 29, 2021

Respectfully submitted,

_s/ Jeremy A. Anapol_____
John G. Powers
(Bar Roll No. 508934)
HANCOCK ESTABROOK, LLP
AXA Tower I, Suite 1800
100 Madison Street
Syracuse, NY 13202
(315) 565-4500
jpowers@hancocklaw.com

*Of Counsel:*

Counsel for Defendant
AMAZON.COM, INC.

Joseph R. Re (*pro hac vice*)
Jon W. Gurka (*pro hac vice*)
Jeremy A. Anapol (*pro hac vice*)
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
Telephone: 949-760-0404
Facsimile:  949-760-9502
joe.re@knobbe.com
joe.cianfrani@knobbe.com
jeremy.anapol@knobbe.com

Colin B. Heideman (*pro hac vice*)
KNOBBE, MARTENS, OLSON & BEAR, LLP
925 Fourth Avenue, Suite 2500
Seattle, WA 98104
Telephone: 206-405-2000
Facsimile:  206-405-2001
colin.heideman@knobbe.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 29, 2021, I caused the foregoing objections to be filed with the Clerk of the District Court using the CM/ECF system, which provided electronic notification of such filing to the following:

| | |
|---|---|
| Bryan J. Vogel, Esq. | bvogel@robinskaplan.com |
| Danielle Rosenthal, Esq. | drosenthal@robinskaplan.com |
| Benjamin C. Linden, Esq. | blinden@robinskaplan.com |
| Christine Yun Sauer, Esq. | cyunsauer@robinskaplan.com |
| Christopher Seidl, Esq. | cseidl@robinskaplan.com |
| Li Zhu, Esq. | lzhu@robinskaplan.com |
| Mary Pheng, Esq. | mpheng@robinskaplan.com |
| Shui Li, Esq. | sli@robinskaplan.com |

Attorneys for Plaintiffs

*s/ Jeremy A. Anapol*

Jeremy A. Anapol (*pro hac vice*)